Neal FOLEY and Associated Cardiovascular & Thoracic Surgeons, L.L.P., On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

SOUTHWEST TEXAS HMO, INC., Humana HMO, Pacificare, Texas Health Network, Texas University Health Plan, Inc., Cigna Healthcare of Texas, Inc., Cigna Dental Health of Texas, Inc., and Cigna Behavioral Health, Inc. Defendants.

No. CIV.A. 1:01–CV–56.

United States District Court,
E.D. Texas,
Beaumont Division.

July 19, 2002.

James A. Morris, Jr., Michael A. Havard, Mark C. Sparks, Provost & Umphrey, Beaumont, TX, for Plaintiffs.

J. Hoke Peacock III, Susman Godfrey, Houston, TX, John Barret Scott, Scott Yung, Dallas, TX, for Defendant Southwest Texas HMO.

Lawrence Joyhnson West, Andrew Scott Hanen, Hanen Alexander Johnson & Spalding, Houston, TX, J. Thad Heartafield Jr., Heartfield & McGinnis, Beaumont, TX, for Pacificare.

John Bruce Shely, Andrews Kurth Mayor Day Caldwell & Keeton, Houston, TX, for Aetna U.S. Healthcare.

Kevin Francis Lee, Jeff D. Otto, Austin, TX, for Texas University Health Plan.

Elizabeth D. Alvarado, Candice Eileen Sayre, Shannon Martin Finkelstein & Sayre, Houston, TX, Brian P. Brooks, O'Melveny & Myers, Washington DC, for Cigna.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendants' Joint Motion for Judgment on the Pleadings

[Dkt. # 25], and the court having reviewed the motion and the responses on file and having heard oral arguments on this motion is of the opinion that the motion be GRANTED in PART and DENIED in PART for the reasons set forth below.

The plaintiffs originally filed their petition in state court on January 5, 2001, asserting claims under the Texas Insurance Code and for unjust enrichment. The defendants timely removed the case to federal court on the basis of complete preemption under the Employee Retirement Income Security Act of 1974 (ERISA) and the Medicare Act. At no point during this case have the defendants claimed diversity jurisdiction exists. The plaintiffs filed a motion to remand, which this court denied on September 5, 2001. Following the denial of the plaintiffs' motion to remand, the defendants filed this motion for judgment on the pleadings.

## I. Background

### A. Factual Background

According to the plaintiffs' First Amended Class Petition:

The plaintiffs, Dr. Neal Foley, Dr. Louis Roddy, and Associated Cardiovascular and Thoracic Surgeons, L.L.P., along with several other doctors and physician groups used North American Medical Management (NAMM) to negotiate contracts on their behalf with the defendants, various health maintenance organizations (HMOs). After the negotiations had been completed, NAMM acted as a third-party administrator processing medical claims and paying the various doctors and physician groups. In the late 1990s, NAMM began experiencing problems with its computer system that resulted in billing and payment problems. The plaintiffs allege that they have not been paid from either NAMM or the HMOs for work done on patients of the HMOs since January 1, 2000. The plaintiffs filed this suit under a provision of the Texas Insurance Code and for unjust enrichment against the HMOs to recover for services rendered.

### B. The Texas Insurance Code Provisions at Issue

The plaintiffs assert that they have provided services to the defendants or their enrollees through NAMM and have not been paid for these services since January 1, 2000. The plaintiffs looked to recoup payment for these services by filing suit in Texas state court against the defendants for violating Texas Insurance Code Article 20A.18B(c)(1), part of Texas's Health Maintenance Organization Act, which states:

Not later than the 45th day after the date that the health maintenance organization receives a clean claim from a physician or provider, the health maintenance organization shall:

(1) pay the total amount of the claim in accordance with the contract between the physician or provider and the health maintenance organization.

Texas Insurance Code Article 20A.18B(c)(1). The statute defines a "clean claim" as "a completed claim, as determined under Texas Department of Insurance rules, submitted by a physician or provider for medical care or health care services under a health care plan." Texas Insurance Code Article 20A.18B. The Texas Insurance Code continues:

A health maintenance organization that violates Subsection (c) or (e) of this section is liable to a physician or provider for the full amount of billed charges submitted on the claim or the amount payable under the contracted penalty rate, less any amount previously paid or any charge for service that is not covered by the health care plan.

Texas Insurance Code Article 20A.18B(f). For further ammunition against the defendants, the plaintiffs then ask the court to

look to Article 21 of the Texas Insurance Code, which contains general provisions for the Insurance Code. Article 21.07–6, sec. 12(a), entitled Third Party Administrators, states:

> If an insurer, plan, or plan sponsor uses the services of an administrator under a written agreement as required by Section 11 of this article, the payment of premiums or contributions to the administrator by or on behalf of an insured or plan participant is considered to have been received by the insurer, plan, or plan sponsor, and payment of return premium, contribution, or claims by the insurer, plan, or plan sponsor to the administrator are not considered payment to the insured, plan participant, or claimant until the payments are received by the insured, plan participant, or claimant.

Texas Insurance Code Article 21.07–6, sec. 12(a). Section 12(b) of this provision states that section 12(a) does not limit the right of an insurer, plan, or plan sponsor to bring a claim against the administrator for the administrator's failure to make payments to the insured, plan participant, or claimant. Texas Insurance Code Article 21.07–6, sec. 12(b).

### C. The September 5, 2001 Opinion

On September 5, 2001, the court denied the plaintiffs' motion to remand. For that motion, the defendants argued that remand was improper because ERISA and the Medicare Act preempted the plaintiffs' state law claims. Because the court found ERISA preempted the plaintiffs' claims, the court did not review Medicare preemption.

In the September 5, 2001 opinion, the court found that the plaintiffs failed to establish the existence of an independent contractual relationship between themselves and the HMOs from whom they sought to recover for services rendered. The court, thus concluded that the plain-tiffs must be attempting to recover from these defendants based on the plaintiffs' position as assignees of the HMOs' enrollees' benefits. As some of the enrollees were covered by ERISA-governed plans and as Fifth Circuit precedent established that ERISA preempts state law claims seeking "to recover benefits owed under [a] plan to a plan participant who has assigned her right to benefits to [her health care provider]," *Transitional Hosp. Corp. v. Blue Cross and Blue Shield of Texas, Inc.,* 164 F.3d 952, 954 (5th Cir. 1999), the court found ERISA preemption existed, and therefore, that it could properly exercise jurisdiction over this case. After reviewing the briefing in this case and hearing oral arguments regarding the defendants' motion for judgment on the pleadings, the court finds that it was in error when it concluded that the plaintiffs were attempting to recover from the HMOs as assignees of their enrollees' benefits.

Article 20A.18B requires the HMO to pay the total amount of a claim in accordance with the contract between the physician or provider and the HMO within forty-five days of receiving a clean claim from the physician or provider. Because the plaintiffs did not allege the existence of a contract between themselves and the HMOs, the defendants argued that the plaintiffs' claims were premised on the existence of an assignment and the court agreed. At oral arguments, the attorney for the plaintiffs made clear that the plaintiffs were not seeking payment as assignees of the enrollees' benefits, but rather he argued that the Texas statutes listed above provided the plaintiffs with an independent cause of action against the HMOs that is separate and distinct from any position they may occupy as assignees of the enrollees' benefits.

The defendants countered by arguing that Article 20A.18B requires payment in accordance with the contract between the physician or provider and the HMO, and that the plaintiffs never alleged such a contract exists. The defendants argued that without a contractual relationship, the plaintiffs' right to payment must flow through an assignment of benefits, and as such, the plaintiffs' claim is preempted. The plaintiffs' counsel during oral argument and in his briefing to the court did not dispute that no contractual relationship exists between the parties, but he did dispute, however, what effect the lack of contractual privity has on his clients' Article 20A.18B(f) claim. In the end, the lack of contractual privity may mean that the plaintiffs are unable to recover under this statute, but it does not necessarily mean that they are attempting to recover as assignees of enrollees' benefits.

The issue, therefore, is whether this court still has jurisdiction to hear this case. The defendants rest jurisdiction on complete federal preemption of the plaintiffs' state law claims. The plaintiffs' actual ability to recover under the facts of this case as applied to the state law through which they attempt to recover is irrelevant to the issue of preemption. All that really matters is whether this statute creates an independent cause of action against the defendants that for the purposes of ERISA preemption does not "relate to" an ERISA plan and for Medicare purposes does not "arise under" the Medicare Act.

Because the court's rationale as expressed in the September 5, 2001 opinion regarding the plaintiffs' motion to remand, i.e., that the plaintiffs were attempting to recover as assignees of ERISA plan benefits, no longer appears to the court to be a correct view of the plaintiffs' Article 20A.18B(f) claim, the court needs to reanalyze the preemption issue. This court is mindful that federal courts in our dual system of government have limited, as opposed to general jurisdiction, and "should be zealots to avoid expansion of federal jurisdiction." *Poindexter v. Board of Sup'rs, Roanoke County*, 177 F.Supp. 852, 854 (W.D.Va.1959). In this vein, the Fifth Circuit has stated that "[t]he lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir.1996). As such, this court has a continuing duty to review its subject matter jurisdiction over a particular case, and to act accordingly if it becomes apparent that subject matter jurisdiction does not exist.

## II. ERISA Preemption Analysis

Because the court originally found that ERISA preemption gave it subject matter jurisdiction over this case, ERISA preemption seems like a logical place to begin a review of whether the court does have such jurisdiction. Over a decade ago, this court wrote that "[m]uch judicial ink has been painstakingly expended construing the preemption language" of ERISA. *Beaumont Neurological Hosp. v. Humana, Inc.*, 780 F.Supp. 1134, 1136 (E.D.Tex. 1991). Despite the large number of judicial opinions, treatises, and law review articles published on the subject in the ensuing years, it appears to this court that much more judicial ink will be spilled discussing ERISA preemption in the future. This is not a surprising occurrence as the Fifth Circuit has remarked on multiple occasions that applying the "relate to" language of ERISA to a particular state law under a specific set of facts is a difficult task. *See, e.g., Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 244 (5th Cir.1990).

### A. *ERISA Generally*

On Labor Day 1974, President Gerald Ford signed the Employee Retirement In-

come Security Act of 1974 into law, enacting the first federal legislation protecting the rights of America's workers who earn pension benefits. ERISA: A COMPREHENSIVE GUIDE 1 (Martin Wald & David Kenty, eds.1991). ERISA started as 200 pages of legislation, but through the years it has grown exponentially. Michael Sirkin, *The 20 Year History of ERISA*, 68 ST. JOHN'S L. REV. 321, 321 (1994). Congress's goal in passing ERISA was to replace the patchwork of state laws governing employee benefits with a uniform body of federal law. *See N.Y. State Conference of Blue Cross v. Travelers Ins. Co.*, 514 U.S. 645, 656–57, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). One of the tools Congress placed into ERISA to accomplish this goal was a preemption provision. *See* Wald & Kenty, supra at 249 ("The preemption by ERISA of state laws was designed to create a uniform national law governing employee benefit plans that would, among other things, permit the uniform administration of plans covering employees in several states.").

■ ERISA's preemption clause specifies, in pertinent part, that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a); *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 (5th Cir.1992). The Supreme Court has repeatedly stressed that this "relate to" standard must be interpreted expansively, and that the words are to be given their "broad common-sense meaning." *Egelhoff v. Egelhoff*, 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Any state law which has a connection with or reference to an employee benefit plan is generally preempted. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). However, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 100 n. 21, 103 S.Ct. 2890. Lawsuits against ERISA plans for "run-of-the-mill" state law claims, including certain tort actions, are therefore not preempted by ERISA, despite the fact that they plainly affect and involve employee benefit plans. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

■ According to the Supreme Court, a law relates to an ERISA plan if it: 1) has a connection with or 2) reference to such a plan. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). When a law acts "immediately and exclusively" upon an ERISA plan or where the existence of an ERISA plan is "essential" to the law's operation, the law makes reference to an ERISA plan. *Id.* at 325, 117 S.Ct. 832. To determine if a law has a connection with an ERISA plan, the Court instructed lower courts to look at "the objectives of the ERISA statute as a guide to the scope of the state law Congress understood would survive" and at "the nature of the effect of the state law on ERISA plans." *Id.* The Court has stated that state-law claims that are preempted by ERISA and came within the scope of ERISA's civil enforcement provision could be recharacterized as arising under federal law, and as such, are removable to federal court. *Metropolitan Life*, 481 U.S. at 64–67, 107 S.Ct. 1542; *see*

*also Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762 (5th Cir.1989).

The Fifth Circuit has developed a two-prong test to aid courts in their preemption inquiry. *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236, 244 (5th Cir.1990). The Fifth Circuit has found preemption of state law claims when: 1) the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and 2) the claim directly affects the relationship among the traditional ERISA entities (*i.e.,* plan administrators/fiduciaries and plan participants/beneficiaries). *Id.* at 245. The fact that the plaintiffs' recovery may be equivalent to the value of the benefits received by the defendants' enrollees does not alter the outcome of the court's ERISA preemption analysis. *Id.* at 247.

Before turning to the analysis of ERISA's preemption clause's impact on these Texas Insurance Code provisions, the court notes that a presumption against preemption and the exercise of federal jurisdiction exists. Because of the principles of federalism, the Supreme Court has stated that the presumption is that a cause of action lies outside the limited jurisdiction of federal courts. *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In discussing ERISA preemption, specifically, the Supreme Court has stated that it has "never assumed lightly that Congress has derogated state regulation, but instead [has] addressed claims of pre-emption with the starting presumption that Congress [did] not intend to supplant state law." *N.Y. State Conference of Blue Cross v. Travelers Ins. Co.,* 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

### B. The Texas Insurance Code Claim

The plaintiffs' creative combination of these two Texas Insurance Code statutes presents this court with a novel approach to recovery in the state of Texas. The plaintiffs' claim attempts to take two provisions from the Texas Insurance Code, neither of which have ever been interpreted by another court before the filing of this lawsuit, have them read together, and have the court impose a type of vicarious liability on the defendants for a third party's failure to make payments to the plaintiffs. The court does not completely agree, however, with the plaintiffs' interpretation of how these statutes interact with each other.

### 1. The Plaintiffs' View

The plaintiffs contend that through NAMM they sent clean claims to the defendants and that they have never received payment for these claims. The plaintiffs claim Article 20A.18B requires the defendants to make payments in accordance with the contract between the physician or provider and the defendants within forty-five days of receipt of a clean claim and provides them with a cause of action against the defendants for the failure to do so, regardless of whether they are in contractual privity with the defendants. The plaintiffs further argue that Article 21.07–6, sec. 12(a) makes the defendants liable to the plaintiffs if NAMM failed to make payments to them, even if the defendants made payments to NAMM. As the plaintiffs sum up their claim: "These particular state laws-Texas Insurance Code Arts. 21.07–6 and 20A.18B-impose vicarious liability upon all insurers, plans, and plan sponsors for services rendered by physicians and medical providers through third-party administrators." *Plaintiffs' Response to Defendants' Joint Motion for Judgment on the Pleadings* at 12.

### 2. The Court's View

The court interprets these two provisions of the Texas Insurance Code differ-

ently from the manner urged by the plaintiffs. The court agrees with the plaintiffs that 20A.18B(f) allows them to bring suit against the defendants for the defendants' alleged violation of 20A.18B(c)(1). Article 20A.18B(f) states that an HMO "that violates Subsection (c) or (e) of this section is liable to a physician or provider for the full amount of billed charges submitted on the claim." Thus, the plain language of the statute allows either a physician or provider to bring suit against an HMO for violating 20A.18B(c)(1). Nothing in subsection (f) requires contractual privity between a physician and the HMO to exist before the physician may bring suit against the HMO for violating subsection (c). Thus, according to 20A.18B(f), a physician could sue an HMO for the HMO's failure to pay in accordance with the contract between the HMO and a provider.

The court's view diverges from that of the plaintiffs' when Article 21.07–6, sec. 12(a) enters the mix. Article 21.07–6, sec. 12(a) sets out a general rule that an insurer, plan, or plan sponsor bears the risk of an administrator's failure to transfer payments either to or from the insurer, plan, or plan sponsor. The plaintiffs, however, have brought suit under Article 20A.18B, which requires HMOs to make payment in accordance with the contracts between the physicians or providers and the HMOs. In a cause of action under Article 20A.18B(f), the contract between the physician or provider and the HMO would seem to govern the outcome, and thus the effect of the payment to a third-party administrator would depend upon the contents of this contract.

■ Furthermore, the court interprets 21.07–6, sec. 12(a) as holding an insurer, plan, or plan sponsor responsible for payments to an insured, plan participant, or claimant until the party the insurer, plan, or plan sponsor was obligated to pay actually receives payment. This provision makes clear that in the end, if the insurer, plan, or plan sponsor owes an insured, plan participant, or claimant money, the insurer, plan, or plan sponsor will be held responsible for making sure the money gets to the proper party. If the insurer, plan, or plan sponsor uses an administrator and pays money earmarked for an insured, plan participant, or claimant to the administrator for the purpose of the administrator making the final payment to the insured, plan participant, or claimant, the insurer, plan, or plan sponsor is liable for the administrator's failure to transfer the payment to the ultimate payee. This provision, thus, takes away from an insured, plan, or plan sponsor that uses a third-party administrator the defense that it already made a payment when an insured, plan participant, or claimant sues it after the administrator fails to transfer the payment. The question remains then: Did the HMO make payments in accordance with the contract between itself and the physicians or providers (*i.e.*, did the parties the defendants were contractually obligated to pay receive payment)?

## C. ERISA Preemption Analysis of Plaintiffs' Texas Insurance Code Claim

■ While the defendants do not contend that the plaintiffs' Article 20A.18B(f) claim makes reference to an ERISA plan, the defendants do argue that it has a connection with an ERISA plan, and as such, relates to an ERISA plan. Because the court finds that the claim does not have an impermissible connection with an ERISA plan and because the court finds that the claim does not fall within the scope of ERISA's civil enforcement provision, the court holds that the plaintiffs' Texas Insurance Code claim is not preempted by ERISA.

Both parties admit that if the plaintiffs had a contract with the defendants, the plaintiffs could bring a valid breach of contract claim against the HMOs if they did not make payments to the plaintiffs as required by the contract. *Transcript of May 23, 2002 Hearing* at p. 51 ln. 17–24; p. 60 ln. 1–19. Case law supports this position. *See, e.g., Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc.,* 187 F.3d 1045 (9th Cir.1999); *Orthopaedic Surgery Assoc. of San Antonio v. Prudential Health Care Plan, Inc.,* 147 F.Supp.2d 595 (W.D.Tex.2001); *In re Managed Care Litigation,* 135 F.Supp.2d 1253 (S.D.Fla.2001); *Board of Trustees v. Pan American Life Ins. Co.,* 112 F.Supp.2d 602 (E.D.La.2000); *Pension Plan for the Employees of Battenfeld Grease & Oil Corp. v. Principal Mutual Life Ins. Co.,* 62 F.Supp.2d 1055 (W.D.N.Y. 1999).

In *Blue Cross,* the Ninth Circuit affirmed a district court's decision that ERISA did not preempt the plaintiff's claim and that it lacked subject matter jurisdiction when a health care provider sued a health care plan for breach of their provider agreement. *Blue Cross,* 187 F.3d at 1047. In so affirming, the Ninth Circuit held that claims which arise from the terms of provider agreements and could not be asserted by the plaintiff's patients/assignors are not claims for ERISA benefits subject to preemption. *Id.* at 1050. The court wrote that "[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount,* or level of payment, which depends on the terms of the provider agreements." *Id.* at 1051 (emphasis in original). Thus, to the Ninth Circuit, to the extent the plaintiffs are suing under a state law on their own behalf as creditors, and not on behalf of their patients, they are entitled to do so. *Id.; see also* D. Brian Hufford, MANAGED CARE LITIGATION:

THE ROLE OF PROVIDERS, 1216 PLI/CORP. 487, 499 (November 2000) ("The critical question for the courts is whether the provider's claim is based on a direct cause of action against the managed care company, in which situation it is not preempted, or whether it is derivative to the patient's cause of action, where ERISA applies."). Several other courts are in agreement with the Ninth Circuit's holding. *See, e.g., Orthopaedic Surgery,* 147 F.Supp.2d at 601–03; *In re Managed Care Litigation,* 135 F.Supp.2d at 1268; *Board of Trustees,* 112 F.Supp.2d at 606–08; *Pension Plan for the Employees of Battenfeld Grease & Oil Corp.,* 62 F.Supp.2d at 1058–60.

Thus, if the plaintiffs were suing to enforce a contract between themselves and the defendants, neither would argue that such a claim is preempted by ERISA. What Article 20A.18B allows the plaintiffs to do is to sue on their own behalf for the defendants' breach of a contract between the defendants and a third party. The question then becomes does a state law that allows the plaintiffs to sue for a breach of a contract between the defendants and another party have an impermissible connection with an ERISA plan?

This court holds that it does not. Under either scenario-the plaintiffs being in contractual privity or, through the use of 20A.18B, not-the plaintiffs are merely attempting to hold the defendants liable for the obligations they undertook in a contract. These plaintiffs are not attempting to stand in the shoes of their patients to collect benefits promised to the defendants' enrollees. This court has not been confronted with any reason why a state law allowing another party that lacks an ERISA relationship with the defendants to sue to enforce the contract between an HMO and a third party, like NAMM, should be preempted. Such a provision merely recognizes the practical situation

that managed care often involves multiple contractual relationships entered into by various parties, and that such contracts regularly envision benefits being passed along to parties not privy to a specific contract. See Vicki Lawrence MacDougall, *The "Shared Risk" of Potential Tort Liability of Health Maintenance Organizations and the Defense of ERISA Preemption*, 32 VAL. U.L. REV. 855, 864–67 (1998) (discussing the typical contractual relationships entered into by managed care entities); Vernellia R. Randall, *Managed Care, Utilization Review, and Financial Risk Shifting: Compensating Patients for Health Care Cost Containment Injuries*, 17 U. PUGET SOUND L. REV. 1, 19 (1994) (describing the managed care relationship of the physician, patient, and HMO as "triangular").

The Fifth Circuit has stated that health care providers were not a party to the ERISA bargain struck between plans and plan participants by Congress. *Memorial Hosp.*, 904 F.2d at 249. As such, in their role as doctors or health care providers, the plaintiffs are not parties to any health insurance plan formed under ERISA, and therefore the plaintiffs have no relationship with the defendants that would be governed by ERISA. In fact, in the Fifth Circuit, a health care provider has no independent cause of action under ERISA against a plan that would enable the provider to recover ERISA benefits. *Id.* Instead, these parties' relationships flow from and are governed by a series of contracts entered into amongst them. In other roles, say as assignee or plan participant, the plaintiffs may be governed by ERISA, *see, e.g., Hermann Hosp.*, 845 F.2d at 1290, but this is not the situation presently before the court. As the Fifth Circuit wrote in *Memorial Hospital:* "We cannot believe that Congress intended the preemptive scope of ERISA to shield welfare plan fiduciaries from the consequences of their acts toward non-ERISA

health care providers when a cause of action based on such conduct would not relate to the terms or conditions of a welfare plan, nor affect-or affect only tangentially-the ongoing administration of the plan." *Memorial Hosp.*, 904 F.2d at 250.

Thus, it is not surprising that Article 20A.18B(f) does not violate either prong of the Fifth Circuit's preemption test set out in *Memorial Hospital*. First, such a statute does not address an area of exclusive federal concern, but rather it allows a party that has not received payment to bring suit to make another party pay in accordance with a contract that party has with a third party. The enforcement of contracts can hardly be said to be an exclusive area of federal concern. *See Memorial Hosp.*, 904 F.2d at 246 ("Enforcing the allocation of risks between commercial entities that conduct business in a state is a classically important state interest."); *see also Gaston Memorial Hosp. v. Bridgestone/Firestone*, 830 F.Supp. 287, 290 (W.D.N.C. 1993). Second, this statute has no effect on the relationship between traditional ERISA entities (*i.e.*, plan administrators/fiduciaries and plan participants/beneficiaries). In this case, the plaintiffs are neither plan participants, nor beneficiaries. Further, there is no claim that this statute will prevent beneficiaries from receiving benefits or change beneficiaries' entitlement to benefits. In sum, this claim does not encroach upon the relationship between plan participants and the plan, and this combined with the fact that the claim does not infringe upon an area of exclusive federal concern, leads to the conclusion that it is not the type of state law that the Fifth Circuit stated would be preempted in *Memorial Hospital*.

A statute that allows both physicians and providers to bring suit against an HMO for the HMO's failure to make payments in accordance with the contract be-

tween the HMO and only one of these parties may raise the cost for an HMO to do business in Texas. In practice, however, this provision only raises the cost of doing business in Texas if the HMO breaches contracts it entered into with other parties. If the HMO meets all contractual obligations, this provision should have little effect on its cost of doing business in Texas. Furthermore, HMOs, in Texas, are still free to set up their ERISA-governed plans in any manner they choose. Article 20A.18B does not limit or allow for challenges to any substantive coverage decision that an ERISA plan might make. Further, it does not require an ERISA plan to maintain any specific coverages. In total, Article 20A.18B has very little impact on the administration of the defendants' ERISA-governed plans.

■ Throwing Article 21.07–6, sec. 12(a) into the mix does not change the outcome. All Article 21.07–6 does is put insurers, plans, and plan sponsors on the hook for an administrators failure to pay a party that the insurer, plan, or plan sponsor already was obligated to pay. Under 21.07–6, sec. 12(a), which third party administrator the defendants' choose to deal with becomes an important question that could subject it to making a double payment if the defendant chooses to use an administrator that fails to pay the insured, plan participant, or claimant. This would obviously cost the defendants money, but simply raising the cost of doing business in a state does not lead to preemption by ERISA. *See DeBuono v. NYSA–ILA Medical and Clinical Services Fund,* 520 U.S. 806, 815–16, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 659–60, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

■ The court notes that even if it were to find the plaintiffs' cause of action under Article 20A.18B(f) related to an ERISA plan, the Savings Clause would still prevent the claim from being preempted. Section 514(b)(2) of ERISA, commonly referred to as the "Savings Clause," states: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." After reviewing prior Supreme Court holdings, the Court has laid out a two part test for determining whether the Savings Clause applies:

1) whether the state law regulates insurance as a common sense matter; and

2) is the common sense view confirmed by an application of the three McCarran–Ferguson Act factors:

A) whether the practice has the effect of reallocating the risk between the insured and the insurer;

B) whether it is an integral part of the policy relationship between the insured and the insurer; and

C) whether the practice is limited to entities in the insurance industry.

*UNUM Life Ins. Co. of America v. Ward,* 526 U.S. 358, 367, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). The state law at issue does not need to meet all three of the McCarran–Ferguson factors for the Savings Clause to apply. *Id.* at 373, 119 S.Ct. 1380.

The Supreme Court has stated that a "common-sense view of the word 'regulate' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. 1549. Does this state statute set up a mechanism for governing insurance law, specifically, or does it create a flexible rule that may be applied to several different situations?

In *Rush Prudential HMO, Inc. v. Moran*, a case decided by the Supreme Court just a few weeks ago, the Court found that a provision of the Illinois HMO Act escaped ERISA preemption by application of the Savings Clause. 536 U.S. 355, 122 S.Ct. 2151, 2164, 153 L.Ed.2d 375 (2002). In applying the common sense factor to the Illinois HMO Act, the Court noted that the statute defined a health maintenance organization by referencing the risk that it bears. *Id.* at 2159–60. The Court continued by quoting from an earlier decision by stating: "The defining feature of an HMO is receipt of a fixed fee for each patient enrolled under the terms of a contract to provide specified health care if needed." *Id.* at 2160 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 218, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). The Court found that because of these features of HMOs, the Illinois HMO Act, as a matter of common sense, was specifically directed toward the insurance industry. *Id.* at 2163.

The statute under which the plaintiffs have brought their cause of action is found in the Texas Insurance Code, and like the statute in *Rush*, it is part of the state's HMO Act. The Texas HMO Act defines a "health maintenance organization" as "any person who arranges for or provides a health care plan, a limited health care service plan, or a single health care service plan to enrollees on a prepaid basis." Texas Insurance Code Article 20A.02(n). The term "health care plan" as used in the definition of a "health maintenance organization" is defined by the Act as "any plan whereby any person undertakes to provide, arrange for, pay for, or reimburse any part of the cost of any health care services; provided, however, a part of such plan consists of arranging for or the provision of health care services, as distinguished from indemnification against the cost of such service, on a prepaid basis through insurance or otherwise." Texas

Insurance Code Article 20A.02(1). Thus, Texas's definition of an HMO specifically contemplates providing and paying for the cost of its enrollees' health care and spreading the risk of such care through the prepayment of fees by its enrollees. This court finds that the Texas HMO Act, like the Illinois HMO Act, provides the state with a mechanism for regulating insurance and does not create a flexible rule that may be applied in several different situations.

The McCarran–Ferguson factors do nothing to dissuade the court from this conclusion. Before moving to these factors, though, the court notes that the Supreme Court has called these factors merely "guideposts" that are "relevant" to a court's Savings Clause analysis, but not "required" to prevent ERISA prevention of a state law. *UNUM Life Ins. Co. of America v. Ward*, 526 U.S. 358, 373–74, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999). Thus, it is well settled that a state law does not have to satisfy all three factors in order to escape ERISA preemption under the Savings Clause. *Id.* at 373, 119 S.Ct. 1380. As the Supreme Court has done on multiple occasions, this court leaves open the question of whether Article 20A.18B(f) may be described as going to a practice that spreads policy holder risk because the second and third factors are satisfied by the provision. *See, e.g., Rush*, — U.S. at ——, 122 S.Ct. at 2163; *UNUM*, 526 U.S. at 373, 119 S.Ct. 1380.

The second factor asks whether the provision is "an integral part of the policy relationship between the insurer and the insured." *Id.* (quoting *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. 2380). It almost can go without saying that a major part of the HMO's arrangement of or providing of health care services to its enrollees is having doctors that are willing to see the enrollees. Managed care systems would

not work if the insurer sent its insureds to doctors, but the doctors refused to see the insureds. Such a situation would defeat the purpose of Congress in enacting ERISA, rather than advancing it. *Memorial Hosp.*, 904 F.2d at 247–48. The possibility of this scenario occurring increases when the insurer delays in paying or fails to pay the doctors it contracts with to provide services to its insureds. Article 20A.18B(f) provides doctors with a cause of action against HMOs that fail to pay in accordance with their contracts, and thus helps ensure that enrollees will have doctors to visit, which is an integral part of the policy relationship between the insureds and the insurer. Furthermore, the creation of a cause of action that allows doctors who are not in direct contractual privity with the HMOs to sue the HMOs for their failure to pay in accordance with their contracts provides physicians with an option other than suing the enrollees for the services rendered, which is good for the insured/insurer policy relationship.

The third McCarran–Ferguson factor asks whether the state law is "limited to entities within the insurance industry." *Id.* at 375, 119 S.Ct. 1380. This third factor is satisfied for many of the same reasons that the provisions passes the common sense factor. Article 20A.18B(f), which is found in the Texas Insurance Code, is directed at HMOs, entities traditionally deemed within the insurance industry, and impacts their contracts with physicians and/or providers with respect to payment for services provided to the HMOs' insureds. Accordingly, this court finds that even if Article 20A.18B(f) has an impermissible connection with an ERISA plan, the provision escapes ERISA preemption by application of ERISA's Savings Clause.

 Finally, even if the court were to find that the plaintiffs' cause of action under Article 20A.18B(f) related to an ERISA plan pursuant to § 514(a) of ERISA, this would only lead to ordinary preemption, which is not sufficient to support removal jurisdiction. *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998). "Preemption" is a word that cannot be used loosely because two types of preemption exist: 1) ordinary preemption and 2) complete preemption. Ordinary preemption merely displaces state law, whereas complete preemption " 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,' generally rendering the entire case removable to federal court at the discretion of the defendant." *McClelland*, 155 F.3d at 516–17 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Ordinary preemption alone would not be sufficient to remove this case to federal court. *Id.* at 516.

Complete preemption " 'recharacterizes' preempted state law claims as 'arising under' federal law for purposes of determining federal question jurisdiction, typically making removal available to the defendant." *Id.; Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir.2000). In ERISA cases, the Fifth Circuit has held that complete preemption occurs when ordinary preemption exists (*i.e.*, the claim relates to an ERISA plan pursuant to § 514(a)) along with the state law claim falling within the scope of § 502(a)(1)(B) of ERISA—the statute's civil enforcement provision. *McClelland*, 155 F.3d at 517.

 ERISA § 514(a) provides for the ordinary preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). While ERISA § 502(a)(1)(B), ERISA's civil enforcement provision, states: "A civil action may be brought-by a participant or beneficiary-to recover benefits due to him under

the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Removal jurisdiction is proper only in the narrow circumstances where a state law claim is completely preempted by federal law, but when a claim is completely preempted, a plaintiff cannot avoid federal jurisdiction by "artful pleading." *See Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *Avitts v. Amoco Production Co.,* 53 F.3d 690, 693 (5th Cir.1995). A claim that relates to an ERISA plan, but does not seek to enforce rights under § 502(a), does not create federal removal jurisdiction. *McClelland,* 155 F.3d at 518–19.

 It is well-settled that a medical provider's "state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud are completely preempted by ERISA when the [provider] seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the [provider]." *Transitional Hosp.,* 164 F.3d at 954 (citing *Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1290 (5th Cir.1988)). Such claims are preempted because they are "dependent on, and derived from the rights of the plan beneficiaries to recover benefits under the terms of the plan." *Id.* at 955. By contrast, a medical provider's claim is not completely preempted where it is "independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations." *Memorial Hospital,* 904 F.2d at 250.

The plaintiffs' Article 20A.18B(f) claim is not based on the existence of an ERISA plan. Furthermore, the plaintiffs do not seek to enforce rights that are protected by ERISA's civil enforcement provision.

Rather, the plaintiffs seek to enforce obligations independent of any of the defendants' enrollees' rights. The plaintiffs' cause of action under the Texas Insurance Code is one where the plain language of the statute would not allow an enrollee to bring a claim and one which bases recovery on agreements outside the plan documents. While ERISA plans may provide factual background for the plaintiffs' Article 20A.18B(f) claim, the plans are not the source of the obligation the plaintiffs seek to enforce. Such a state law claim cannot be said to fall within ERISA's civil enforcement provision, and thus, is not completely preempted by ERISA.

Accordingly, the court finds that the plaintiffs' Article 20A.18B(f) claim is not preempted by ERISA.

## D. The Plaintiffs' Unjust Enrichment Claim

The plaintiffs have also brought an unjust enrichment claim against the defendants. In the complaint, the plaintiffs allege that "as a direct result of the Defendants' actions a benefit was conferred on the Defendants in that the Defendants-or their enrollees-accepted benefits conferred by the Class Members providing medical services to them as their enrollees." *Plaintiffs' First Amended Class Petition* at 8–9. The plaintiffs continue by alleging that the defendants accepted these benefits, but have either refused or failed to pay for them. *Id.* at 9.

 Unjust enrichment is an equitable theory of recovery that is based on an implied agreement to pay for benefits received. *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990); *Coastal Chem, Inc. v. Brown,* 35 S.W.3d 90, 101 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). To recover un-

der unjust enrichment, a claimant must prove:

> (1) that valuable services were rendered or materials furnished;
> (2) for the person sought to be charged;
> (3) which services and materials were accepted by the person sought to be charged, used, and enjoyed by that person; and
> (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged.

*Vortt,* 787 S.W.2d at 944. Generally, a party may recover under an unjust enrichment claim only when there is no express contract covering the services or materials furnished. *Id.* The court now turns to analyze whether this state law claim is completely preempted by ERISA.

### E. ERISA Preemption Analysis of Plaintiffs' Unjust Enrichment Claim

██ Without addressing whether this claim relates to an ERISA plan pursuant to § 514(a), this court finds complete preemption does not exist because the claim does not fall within the scope of ERISA's civil enforcement provision. *See McClelland,* 155 F.3d at 519 ("Thus, although the plaintiffs' [claim] may 'relate to' a ERISA plan, thereby triggering ordinary preemption, we can find no basis for holding that [the claim] asserted ... [fell] within the scope of section 502(a)."). To the extent that the plaintiffs are claiming an independent right to payment apart from the terms of the plan, this claim is not preempted. *Albert Einstein Medical Ctr. v. Nat. Ben. Fund,* 740 F.Supp. 343, 347 (E.D.Pa.1989).

Here, the plaintiffs' claim does not rely upon the existence of a plan for recovery. The plaintiffs allege that they performed work for the defendants and the defendants, after accepting the work, failed to pay for it. The plaintiffs bring this claim in their own independent capacity, and not as assignees of the beneficiaries' benefits. The plaintiffs' claim is not based upon the defendants' promise to provide health care to its enrollees, but rather on the defendants implied promise to pay the plaintiffs for providing services to their enrollees.

ERISA's civil enforcement provision states: "A civil action may be brought-by a participant or beneficiary-to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This unjust enrichment claim does not fall within the scope of ERISA's civil enforcement provision. *See, e.g., Weiner v. Texas Health Choice L.C.,* 2002 WL 441428, at *4 (N.D.Tex. March 20, 2002); *Great–West Life & Annuity Ins. Co. v. Cabell and Co., Inc.,* 1996 WL 735562, at *2 (N.D.Tex. Dec.13, 1996).

The *Memorial Hospital* factors, discussed above, support this conclusion. First, does the state law claim address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan? *Memorial Hosp.,* 904 F.2d at 244. This claim does not. It is a quasi-contractual cause of action that merely has an ERISA plan in its factual background. A commercial dispute between two entities is not, and never has been, an area of exclusive federal concern. *Gaston Memorial Hosp. v. Bridgestone/Firestone,* 830 F.Supp. 287, 290 (W.D.N.C.1993).

Second, does the claim directly affect the relationship among traditional ERISA entities-plan administrators/fiduciaries and plan participants/beneficiaries? *Memorial Hosp.,* 904 F.2d at 244. Again, this claim does not. The court notes that ERISA does not preempt state laws of general applicability that impact ERISA plans only

tenuously, remotely, or peripherally. *Shaw,* 463 U.S. at 98–100, 103 S.Ct. 2890. Any impact this general state law has on an ERISA plan would be too tenuous, remote, or peripheral to result in complete preemption. If the plaintiffs recovered under this cause of action, the beneficiaries' rights would still be defined by the various plans and the plans' terms would be unmodified. In sum, nothing about this claim affects the relationship between traditional ERISA entities.

Accordingly, the court finds the plaintiffs' unjust enrichment claim is not completely preempted by ERISA.

### III. Medicare Analysis

The defendants contend that the Medicare Act (the "Act") provides this court with an independent means of finding subject matter jurisdiction exists. The defendants argue that because the "plaintiffs' allegations concern benefits under the federal Medicare program, plaintiffs' claims must be determined under the federal statutory scheme established for review of Medicare-related claims." *Defendants' Joint Motion in Opposition to Plaintiffs' Motion to Remand* at 15.

*A. Medicare Generally*

The Act provides insurance to eligible Medicare beneficiaries for the cost of hospital and related post-hospital expenses, but precludes reimbursement for services that are not "reasonable or necessary." *Ardary v. Aetna Health Plans of California,* 98 F.3d 496, 498 (9th Cir.1996). The Act also provides for the delegation of Medicare benefit administration to HMOs which are authorized to manage Medicare benefit requests by Medicare beneficiaries, under contracts with the Health Care Financing Administration ("HCFA"). Section 405(g) of Title 42 provides that judicial review of old-age and disability claims may only occur after a "final decision" has been rendered on such claims. This provision is incorporated into the Act through 42 U.S.C. § 1395ff(b), and it applies equally to Medicare benefits managed and administered by HMOs. The Secretary of Health and Human Services (the "Secretary") has promulgated regulations which provide that a "final decision" is rendered on a Medicare claim only after all the levels of administrative review have been exhausted.

A member enrolled with an eligible organization who is dissatisfied by reason of his failure to receive any health service to which he believes he is entitled and at no greater charge than he believes he is required to pay is entitled to a hearing before the Secretary. 42 U.S.C. § 1395mm(c)(5)(B). Incorporating Section 405(g) of Title 42, the Act provides that judicial review of a claim may only occur after a "final decision" has been rendered on such claims. Again, a final decision is rendered on a Medicare claim only after all the levels of administrative review have been exhausted.

The exclusive administrative appeals process applies to all benefit determinations. 42 U.S.C. §§ 405(b), 1395mm(c)(5)(A); 42 C.F.R. § 417.606. All Medicare claims must first be brought for reconsideration to the organization which made the initial determination and to HCFA. 42 C.F.R. §§ 417.616, 417.620. If the dispute is not resolved favorably to the beneficiary, and if the amount in controversy exceeds $100, HCFA's decision may be appealed to an administrative law judge. 42 C.F.R. §§ 417.630, 417.632. The decision may be further appealed to HCFA's Appeals Council, and if the amount in controversy exceeds $1,000, the beneficiary or dissatisfied party may seek the judicial review of the decision in federal court. 42 C.F.R. §§ 417.634, 417.636.

Further, 42 U.S.C. § 405(h), made applicable to the Act by 42 U.S.C. § 1395ii,

requires that judicial review of claims arising under the Act exactly follow the procedure described in 42 U.S.C. § 405(g). The Supreme Court has held that the appropriate inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act. *Heckler v. Ringer*, 466 U.S. 602, 614–15, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)("[t]he third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review of all 'claim[s] arising under' the Medicare Act.")

 Whether a claim "arises under" the Act is determined by either one of two tests enunciated by the Supreme Court. First, a claim arises under the Act if "both the standing and the substantive basis for the presentation" of the claim is the Act. *Heckler*, 466 U.S. at 615, 104 S.Ct. 2013; *Zamora–Quezada v. HealthTexas Medical Group*, 34 F.Supp.2d 433, 439–40 (W.D.Tex.1998). Second, a claim arises under the Act if it is "inextricably intertwined" with a claim for medical benefits. *Heckler*, 466 U.S. at 624, 104 S.Ct. 2013. Administrative review is not necessary when a claim is wholly "collateral" to a claim for benefits, and a colorable showing has been made that the claimant's injury cannot be remedied by the retroactive payment of benefits. *Id.* at 618, 104 S.Ct. 2013.

 In determining whether a claim "arises under" the Act, the term "arises under" is to be interpreted broadly. *Heckler*, 466 U.S. at 615, 104 S.Ct. 2013. In applying this standard, it does not matter how the plaintiffs characterize their claims, if at bottom they seek Medicare benefits, their claim arises under the Act, and they must exhaust the administrative requirements before filing suit in federal court. *Id.* at 621–22, 104 S.Ct. 2013. Ac-

cordingly, the Seventh Circuit wrote in *Bodimetric Health Services v. Aetna Life and Casualty*, its seminal case on the subject:

> A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits. If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.

903 F.2d 480, 487 (7th Cir.1990); *see also Heckler*, 466 U.S. at 621, 104 S.Ct. 2013 (re-construing the plaintiffs' claim as one arising under the Act "because any other construction would allow [the plaintiff] substantially to undercut Congress' carefully crafted scheme for administering the Medicare Act."); *Midland Psychiatric Assoc., Inc. v. United States*, 145 F.3d 1000, 1004 (8th Cir.1998) ("A claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law.")

In *Heckler*, three plaintiffs were Medicare beneficiaries who were denied reimbursement for bilateral carotid body resection surgery ("BCBR") that they had already undergone, because a formal ruling of the Secretary had concluded that BCBR was not a reimbursable medical procedure. 466 U.S. at 609–610, 104 S.Ct. 2013. These three plaintiffs had exhausted some, but not all, levels of administrative review. A fourth plaintiff had not yet undergone BCBR since he could not afford it, but nevertheless sought to challenge the Secretary's formal ruling that BCBR was not a reimbursable medical procedure. *Id.* The district court dismissed the complaint for lack of jurisdic-

tion, concluding that the essence of the plaintiffs' action was a claim of entitlement to benefits for the BCBR procedure, and that any challenges plaintiffs raised concerning the Secretary's formal rulings or procedures were "inextricably intertwined" with a claim for benefits. Therefore, the district court concluded that 42 U.S.C. § 405(g) with its administrative exhaustion requirement provided the sole avenue for judicial review for these claims. *Id.* at 605, 608–609, 104 S.Ct. 2013. The Ninth Circuit reversed the district court's decision. *Id.* at 612, 104 S.Ct. 2013.

In reversing the Court of Appeals, the Supreme Court construed the plaintiffs' claims as nothing "more than, at bottom, a claim that they should be paid for their BCBR surgery." *Id.* at 614, 104 S.Ct. 2013. The Court found that plaintiffs' challenge of the Secretary's formal ruling arose under the Act, because it was "inextricably intertwined" with claims for past or future Medicare benefits. *Id.* Concluding that the "arising under" test is to be broadly interpreted, the Court found that the plaintiffs' claims arose under the Act, because the plaintiffs were challenging an interpretation of the scope and extent of benefits provided by the Act. *Id.* at 615–16, 104 S.Ct. 2013.

## B. Medicare Analysis of the Plaintiffs' Unjust Enrichment Claim

■ The plaintiffs have brought a claim for unjust enrichment against the defendants. The plaintiffs allege that they conferred a benefit on the defendants "in that the Defendants-or their enrollees-accepted benefits conferred by the Class Members providing medical services to them as their enrollees." *Plaintiffs' First Amended Class Petition* at 8–9. The plaintiffs further allege that the defendants have not paid for the services and that the defendants "will be unjustly enriched if allowed to retain these benefits conferred without payment for the reason-

able value of the services rendered by the Class Members." *Id.* Finally, the plaintiffs contend that because of the defendants' actions, they "are entitled to recover the reasonable value of the benefits conferred upon the Defendants." *Id.* at 9.

The court finds that the plaintiffs' cause of action is inextricably intertwined with a claim for Medicare benefits. The plaintiffs contend that they are "entitled to recover the reasonable value of the benefits conferred upon the Defendants"-*i.e.*, the work they did for the defendants' enrollees. *Id.* Thus, under the plaintiffs' claim, if they did $500 worth of tests on one of the defendants' enrollees, they claim the defendants owe them $500. In such a situation, where the plaintiffs seek to recover for work done on enrollees covered by Medicare, this claim is "at bottom" a claim for Medicare benefits. *Heckler,* 466 U.S. at 614, 104 S.Ct. 2013. Furthermore, the plaintiffs' claim cannot be described as wholly "collateral" to a claim for Medicare benefits because the plaintiffs' claim can be remedied by a retroactive payment of benefits after exhaustion of their administrative remedies.

## C. Medicare Analysis of Plaintiffs' Texas Insurance Code Claim

■ The plaintiffs have also brought a claim under the Texas Insurance Code against the defendants claiming they did work for the defendants and have not been paid for this work. *Plaintiffs' First Amended Class Petition* at 5–6. The plaintiffs seek to recover for their work pursuant to Article 20A.18B. *Id.* at 8. The court finds this claim as it relates to recovery for work performed for enrollees covered by Medicare to be inextricably intertwined with the Act.

As stated above, the plaintiffs' Texas Insurance Code claim is basically a breach of contract claim where the plaintiffs seek

to enforce a contract between the defendants and a third party. In so doing, the plaintiffs hope to force the defendants to pay for services they rendered to the defendants' enrollees for which they have not received payment. In a 2001 decision, Judge Stagg of the Western District of Louisiana found that a plaintiff's claim, which the court characterized as a breach of contract claim against an HMO arose under the Act, and that as such, the plaintiff needed to exhaust its administrative remedies before filing suit in federal court. *Lifecare Hosp. v. Ochsner Health Plan,* 139 F.Supp.2d 768, 771–72 (W.D.La.2001).

In *Lifecare Hospitals,* the plaintiff, Lifecare Hospitals, attempted to collect $210,362 from the defendant-HMO for services rendered to three patients. *Id.* at 769. Medicare covered all three patients. *Id.* at 770. The defendant, a fiscal intermediary under the Act, did not pay the plaintiff for all the services rendered to these three enrollees, so the plaintiff filed suit in state court seeking payment for the services rendered. *Id.* The defendant removed the case to federal court, and then the court dismissed it for lack of subject matter jurisdiction. *Id.* After reviewing the Act's "arising under" language, the court stated:

> In this case, Lifecare alleges that it provided medical services to three enrollees in [the defendant's] Medicare plan, and that under its contract with [the defendant's] agent, it is entitled to payment from [the defendant] for the cost of those treatments. Thus, there is no doubt that Lifecare's claims are, at bottom, claims for reimbursement for benefits provided to enrollees in [the defendant's] plan.

*Id.* at 771–72. Because the court found the plaintiff's claim inextricably intertwined with a claim for Medicare benefits, the court held that the claim arose under the Act, and the plaintiff was thus required

to exhaust its administrative remedies before seeking judicial review of its claim. *Id.* at 772.

■ Similarly, the plaintiffs in the case presently before this court seek to recover under a type of breach of contract action for services rendered to the defendants' enrollees. The court agrees with the conclusion reached by Judge Stagg last year, and holds likewise, that the plaintiffs' claim arises under the Act and that the plaintiffs must exhaust their administrative remedies before seeking judicial review. For purposes of the Act, it does not matter how the plaintiffs characterize their claim because a cause of action may arise under the Act, while at the same time arising under another law. *Midland Psychiatric,* 145 F.3d at 1004. The Act makes such claims cognizable, though, only under § 405(g) of the Act and only after exhausting administrative remedies. 42 U.S.C. § 405(h); *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). In cases where the Secretary does not waive the exhaustion requirement, waiver by the district court is impermissible when the plaintiffs' claim is not wholly collateral to their claim for benefits and when the plaintiffs have not made a colorable showing that their injury could not be remedied by the retroactive payment of benefits after exhaustion of their administrative remedies. *Heckler,* 466 U.S. at 618, 104 S.Ct. 2013. In this case, the plaintiffs claim is not wholly collateral to a claim for Medicare benefits and their injury could be completely remedied by a retroactive payment of benefits.

Because the plaintiffs do not allege that they have exhausted their administrative remedies, the Act bars this suit from proceeding in either federal or state court. Accordingly, the court holds that the plaintiffs' claims as they relate to an attempt to recover for services rendered to the defen-

dants' enrollees covered by Medicare are dismissed without prejudice with leave to refile as a claim for Medicare benefits under 42 U.S.C. § 405(g) after exhaustion of administrative remedies, but only in federal court as required by the statute.

### IV. Conclusion

After reviewing the briefing on file and having heard oral arguments, this court has reconsidered its September 5th decision and has determined that the plaintiffs' state law claims are not completely preempted by ERISA. Further, the court has found that the Medicare Act bars the plaintiffs' claims as they relate to an attempt to recover for services rendered to the defendants' enrollees' covered by Medicare, and thus dismisses the claims, but only with respect to their attempt to recover for services provided to enrollees' covered by Medicare. As such, the court lacks subject matter jurisdiction over the remainder of the plaintiffs' claims, and so remands the case back to the state court from whence it came to resolve the remainder of the issues raised by the plaintiffs' claims. It is, therefore,

ORDERED, that the Defendants' Joint Motion for Judgment on the Pleadings [Dkt. # 25] is GRANTED in PART and DENIED in PART. It is further,

ORDERED, that the Plaintiffs' claims as they related to an attempt to recover for services rendered to the Defendants' enrollees covered by Medicare are DISMISSED WITHOUT PREJUDICE with leave to re-file as a claim for Medicare benefits under 42 U.S.C. § 405(g) after exhaustion of administrative remedies, but only in federal court as required by the statute. It is further,

ORDERED, that each party is to bear their own costs. It is further,

ORDERED, that this case is remanded to the state court from whence it came to resolve the remainder of the issues raised by the Plaintiffs' claims.