Ronnie McSPERITT, Plaintiff,

v.

**HARTFORD LIFE INSURANCE COMPANY, Defendant.**

No. Civ.A.3:04CV1533–G.

United States District Court,
N.D. Texas,
Dallas Division.

April 8, 2005.

Lanny Perkins, Law Office of Lanny E. Perkins, Dallas, TX, for Plaintiff.

Marcus G. Mungioli, Akin Gump Strauss Hauer & Feld, Dallas, TX, Thomas E. Sanders, Helen G. Moore, Akin Gump Strauss Hauer & Feld, San Antonio, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

FISH, Chief Judge.

Before the court is the motion of the defendant Hartford Life Insurance Company ("Hartford") for summary judgment, pursuant to FED. R. CIV. P. 56, on all the claims asserted by the plaintiff Ronnie McSperitt ("McSperitt"). For the reasons set forth below, Hartford's motion is granted.

### I. BACKGROUND

#### A. The Policy

Hartford, an insurance carrier, issued a group disability policy to Symbol Technologies, Inc. ("Symbol"). Hartford Life Insurance Company's Brief in Support of its Motion for Summary Judgment ("Motion for Summary Judgment") at 2. The policy, which is an integral part of an employee

welfare benefits plan governed by ERISA, provides long term disability ("LTD") benefits to eligible Symbol employees. *Id.*

Under the Symbol Long Term Disability Plan (the "plan"), disability benefits are provided if the employee is covered and if the employee furnishes proof that he is totally disabled. The term "totally disabled," as defined in the plan, means that:

> (1) during the Elimination Period; and
>
> (2) for the next 60 months,
>
> [the employee is] prevented by Disability from doing all the material and substantial duties of [his] own occupation on a full time basis.
>
> After that, and for as long as [the employee] remain[s] Totally Disabled, [he is] prevented by Disability from doing any occupation or work for which [he is] or could become qualified by:
>
> (1) training;
>
> (2) education; or
>
> (3) experience.

Administrative Record ("Administrative Record"), *attached to* Appendix to Hartford Life Insurance Company's Brief in Support of Motion for Summary Judgment at H00017.

If an employee qualifies for LTD benefits, the plan requires the employee to provide continued proof of his disability and to submit to an independent examination to determine if he is disabled. Motion for Summary Judgment at 2–3; Administrative Record at H00031. The plan also contains a two-year limitation on benefits paid because of any mental disability. Motion for Summary Judgment at 3; Administrative Record at H00025.

Hartford is the Claims Administrator for the LTD plan. Motion for Summary Judgment at 3. In this capacity, Hartford is responsible for determining what benefits are payable according to the terms and conditions of the plan and to review appeals of claims. *Id.* Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions" of the LTD plan. *Id.* (*quoting* Administrative Record at H00016).

### B. *McSperitt's Claim*

On September 24, 1990, McSperitt began working at Symbol as a Senior Systems Analyst.[1] *Id.* at 2, 3. During his employment at Symbol, McSperitt became insured for LTD benefits under Hartford's Group Long Term Policy on November 1, 1990. *Id.* at 3; Administrative Record at H00001–33; McSperitt's Response ¶ 2.

McSperitt was injured in a car accident four years after he began working at Symbol. Motion for Summary Judgment at 3. Although McSperitt did not report any injuries at the time of accident, the following day he visited Physical Therapy, Inc. complaining of pain and stiffness in his lower back and between his shoulder blades. *Id.*; Administrative Record at H00943. After a doctor at the clinic diagnosed McSperitt with cervical and lumbar strain and post-traumatic cervical and lumbar syndrome, he filed a short-term disability claim and was off work for ten days. Motion for Summary Judgment at 3–4. McSperitt returned to his job for approximately two months, but he stopped working completely on August 11, 1994. Motion for Summary Judgment at 4.

---

**1.** In this position, McSperitt was a sales support person and his duties involved demonstrating, lifting equipment, and traveling by plane two to three times per week. Motion for Summary Judgment at 2 n. 3; Plaintiff's Brief in Response to Hartford Life Insurance Company's Motion for Summary Judgment ("McSperitt's Response") ¶ 66; Administrative Record at H00642, H00936–37.

McSperitt did not, however, file a claim for LTD benefits with Hartford until October 23, 1994. *Id.*

McSperitt continued to receive treatment for several months after he stopped working. *Id.; see also* Administrative Record at H00938–41. On December 2, 1994, McSperitt was certified as totally disabled in a Physician's Statement describing his diagnosis as post-traumatic cervical radicular syndrome and lumbar radicular syndrome. Motion for Summary Judgment at 4; Administrative Record at H01020–21. McSperitt's physician, Dr. Jonathon Walker, listed him as totally disabled to perform his own job. Motion for Summary Judgment at 5; Administrative Record at H00831–32. Based on this assessment, Hartford awarded McSperitt benefits dating back to November 11, 1994. Motion for Summary Judgment at 4 n. 14; Administrative Record at H00879.

In August 1995, Hartford referred McSperitt's claim to Case Management Services to evaluate his potential for returning to work and for rehabilitation. Motion for Summary Judgment at 5. At this time, the reviewing nurse telephoned McSperitt and they discussed his current treatment, his condition, and his interest in returning to work. *Id.* According to McSperitt, his doctors had restricted him from all lifting, bending, or stooping and he was unable to return to his previous job because it required him to travel "70–80% of the time," carry a computer and baggage, and use a keyboard.[2] *Id.* at 5–6;

Administrative Record at H00854. One year later in February 1996, McSperitt informed the reviewing nurse that his pain had increased over the last six months and that he was now taking Percodan in addition to his other prescriptions. Motion for Summary Judgment at 6; Administrative Record at H00791.

In June 1996, a Hartford Vocational Rehabilitation Counselor attempted to contact McSperitt by phone to discuss rehabilitation. Motion for Summary Judgment at 6; McSperitt's Response ¶ 73; Administrative Record at H00787–96. When she could not reach McSperitt, she wrote him a letter suggesting that he would be a good candidate for rehabilitation. Motion for Summary Judgment at 6. Following this correspondence, McSperitt responded and stated that he did not want to explore rehabilitation at that time because his doctor had suggested he undergo surgery.[3] *Id.*

In February 1997, Dr. Walker reported to Hartford that McSperitt was still unable to perform any kind of work because of chronic severe neck pain, back pain, and numbness. *Id.* at 7. Although McSperitt reported that his condition continued to worsen in August 1997, Dr. Walker changed his evaluation. *Id.* On September 5, 1997, Dr. Walker indicated that McSperitt was capable of performing sedentary work with some limitations.[4] *Id.;* Administrative Record at H00330–31. Moreover, since McSperitt refused to undergo sur-

---

2. Additionally, McSperitt stated that he was taking Prozac for his depression, had stopped attending his counseling sessions, and had not followed through with his physical therapy program, referral to a pain specialist, or chiropractic care. Motion for Summary Judgment at 6.

3. In 1996, McSperitt began reporting new symptoms to his doctor. Specifically, he reported increasing numbness in all five fingers

of his right hand, occasional falling when his right leg suddenly "gave-way," and occasional numbness in his shin and foot. Motion for Summary Judgment at 6–7.

4. McSperitt's doctor stated that he was capable of sitting for two hours with rest, standing for two hours with rest, walking for two hours with rest, driving for one hour with rest, and lifting 10 pounds occasionally. *Id.* at 7.

gery, Dr. Walker stated that he had reached his point of maximum medical improvement. Motion for Summary Judgment at 8; Administrative Record at H00329.

On March 25, 1999, Hartford notified McSperitt that it was investigating his continued eligibility for disability benefits because the 60–month "own occupation" period would end on September 12, 1999. Motion for Summary Judgment at 8. After that date, McSperitt would have to meet the plan's "any occupation" definition of disability to be entitled to benefits. *Id.;* Administrative Record at H00676–77. Dr. Walker reported a new diagnosis of McSperitt's condition to Hartford. Motion for Summary Judgment at 8. Given this new assessment, Hartford referred McSperitt's file to its Investigative Unit. *Id.* That unit then conducted a video surveillance of McSperitt over a period of three months.[5] *Id.;* Administrative Record at H00213; McSperitt's Response ¶ 77. Hartford forwarded the video surveillance to Dr. Walker for his review and assessment. Motion for Summary Judgment at 9. After viewing the tapes, Dr. Walker admitted that McSperitt could "sit very comfortably for a prolonged period of time." *Id.;* Administrative Record at H00258. However, Dr. Walker clearly indicated that this was only possible when McSperitt was taking Percodan for his pain. Motion for Summary Judgment at 9; Administrative Record at H00258.

On January 10, 2001, Dr. George Kazda, Associate Medical Director of Medical Advisory Group LLC, reviewed McSperitt's claim to determine whether he qualified as totally disabled for any occupation. Motion for Summary Judgment at 9; McSperitt's Response ¶ 80. Dr. Kazda ultimately concluded that McSperitt had the physical capacity to perform sedentary work. Motion for Summary Judgment at 9. As a result, Hartford terminated McSperitt's long-term disability benefits on February 5, 2001 because he failed to meet the definition of totally disabled as defined in the plan. *Id.;* Administrative Record at H00620–22, H00204–10; McSperitt's Response ¶ 5. On May 3, 2001, McSperitt appealed Hartford's decision to terminate his long-term disability benefits. Motion for Summary Judgment at 9; Administrative Record at H00599. After a review of his claim, Hartford determined that McSperitt was physically capable of performing sedentary work and, therefore, was not physically disabled. Motion for Summary Judgment at 9–10; Administrative Record at H00401–03. Nevertheless, based on new information submitted during Hartford's review, Hartford investigated McSperitt's possible claim to long-term disability benefits under the mental illness provision of the LTD plan. Motion for Summary Judgment at 10; Administrative Record at H00401–03.

During this investigation, Hartford reviewed a neuropsychological evaluation prepared by McSperitt's psychologist, Dr. Nancy Didriksen. Motion for Summary Judgment at 10; Administrative Record at H00595; McSperitt's Response ¶ 81. Dr. Didriksen examined McSperitt on four separate occasions and concluded that he had a severe degree of neurocognitive dys-

---

**5.** The video showed McSperitt standing for over forty-five minutes, moving boxes, lifting, bending, twisting, and reaching. Motion for Summary Judgment at 8; Administrative Record at H00213. Additionally, the video showed McSperitt standing for at least two hours, reaching above his shoulders, climbing into the back of his truck, loading and unloading items from his truck, all without any signs of discomfort. Motion for Summary Judgment at 8–9. Another video showed McSperitt sitting on a metal bleacher at a baseball game for over two hours with no back support. *Id.* at 9.

function.[6] Motion for Summary Judgment at 10; Administrative Record at H00581. Therefore, based on his low level of cognitive functioning, Dr. Didriksen concluded that McSperitt was disabled from any occupation. Motion for Summary Judgment at 10; Administrative Record at H00583.

Hartford reviewed Dr. Didriksen's findings[7] and arranged for an independent medical examination of McSperitt's mental capacity with psychologist Dr. Richard Rogers. Motion for Summary Judgment at 10; Administrative Record at H00158–59. Dr. Rogers found no signs of a formal thought disorder and found McSperitt's command of language commensurate with his college education. Motion for Summary Judgment at 11; Administrative Record at H00162. Dr. Rogers also believed that McSperitt fit the diagnosis for a major depressive disorder of mild severity, but overall found that McSperitt exaggerated his problems. Motion for Summary Judgment at 11. Dr. Rogers concluded that McSperitt did not have a mental or psychological impairment that would prevent him from returning to full-time employment. *Id.;* Administrative Record at H00158–68. Based on Dr. Roger's testing, Hartford determined that McSperitt was not mentally disabled as defined by the LTD plan. Motion for Summary Judgment at 11. Hartford informed McSperitt of his rights under ERISA to appeal its decision within 180 days. *Id.;* Administrative Record at H00145–47.

On September 16, 2002, Hartford received notice that McSperitt hired legal counsel. Motion for Summary Judgment at 11; Administrative Record at H00126. McSperitt's attorney informed Hartford that McSperitt intended to appeal its decision. *Id.;* McSperitt's Response ¶¶ 6, 33. McSperitt's attorney, however, did not submit a timely appeal within 180 days. Motion for Summary Judgment at 11–12; *see also* McSperitt's Response ¶¶ 6–9. Instead, McSperitt's attorney waited two years before appealing Hartford's decision. Motion for Summary Judgment at 12; Administrative Record at H00079–80, H00130. On May 28, 2004, McSperitt filed suit against Hartford in the 193rd Judicial District Court of Dallas County. *See generally* Plaintiff's Original Petition ("Petition"), *attached to* Notice of Removal as Exhibit 1. McSperitt alleged damages, as a result of Hartford's denial of McSperitt's claim for LTD benefits, for breach of an insurance contract and breach of the duty of good faith and fair dealing. See *id.* ¶¶ 10–17. Hartford timely removed this case to federal court on July 14, 2004. *See generally* Notice of Removal.

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any

---

**6.** In addition, Dr. Didriksen found McSperitt's verbal and visual memory functioning on the borderline range while his personality and behavioral testing indicated very severe anxiety and depression. Motion for Summary Judgment at 10. Given that his overall test scores were inconsistent with his level of education and occupational achievement, Dr. Didriksen believed that McSperitt had suffered a severe decline in his neurocognitive functioning. *Id.*

**7.** Dr. Milton Jay, a neuropsychologist, reviewed the findings of Dr. Didriksen and disagreed with her findings as support for McSperitt's alleged cognitive deficiencies. Hartford Life Insurance Company's Reply Brief In Support of its Motion for Summary Judgment ("Reply Brief") at 15; Administrative Record at H00445–57.

material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company,* 780 F.2d 1190, 1197 (5th Cir.1986). Nonetheless, summary judgment is a drastic remedy that should be used cautiously. *Murrell v. Bennett,* 615 F.2d 306, 309 (5th Cir.1980).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 725 (5th Cir.2002) (citing *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *ERISA Preemption of McSperitt's Claims*

Hartford argues that McSperitt's petition clearly alleges claims arising under federal law. *See* Motion for Summary Judgment at 12–13; Petition ¶¶ 7–9, 12–13, 15–17, *attached to* Notice of Removal as Exhibit 1. Specifically, Hartford contends that since McSperitt's cause of actions for breach of contract, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act ("Texas DTPA") constitute claims for benefits under an employee welfare benefit plan that is subject to ERISA, McSperitt's state law claims are preempted by ERISA. *See* Motion for Summary Judgment at 12–13. The court is persuaded that McSperitt's claims are completely preempted by ERISA and, therefore, Hartford is entitled to judgment as a matter of law.

### 1. *ERISA Preemption Generally*

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank v. Bear Stearns & Company,* 128 F.3d 919, 922 (5th Cir.1997). In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913); see also *Beneficial National Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania,* 876 F.2d 1157, 1160–61 (5th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Carpenter v. Wichita Falls Independent School District,* 44 F.3d 362, 366 (5th Cir.1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select

group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan,* 338 F.3d 433, 437 (5th Cir.2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)), *cert. denied,* 540 U.S. 1104, 124 S.Ct. 1044, 157 L.Ed.2d 889 (2004).

■ The Supreme Court has held that state-law claims seeking relief within the scope of ERISA § 502(a)(1)(B) must be recharacterized as arising under federal law, and as such, are removable to federal court. *Metropolitan Life,* 481 U.S. at 60, 67, 107 S.Ct. 1542; see also *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 762 (5th Cir.1989). According to § 502(a)(1)(B), ERISA's civil enforcement provision:

> § 1132. Civil enforcement
>
> (a) Persons empowered to bring a civil action
>
> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> \*  \*  \*  \*  \*  \*
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132(a)(1)(B). When a claimant seeks relief "within the scope of [ERISA's] civil enforcement provisions," his or her claims are subject to *complete preemption. Metropolitan Life,* 481 U.S. at 66, 107 S.Ct. 1542. Complete preemption "'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of ... making removal

available to the defendant." *McClelland v. Gronwaldt,* 155 F.3d 507, 516 (5th Cir. 1998); see also *Johnson v. Baylor University,* 214 F.3d 630, 632 (5th Cir.), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).

■ Another type of preemption, known as "conflict" or "ordinary" preemption, "arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana,* 338 F.3d at 439. Under ERISA's conflict preemption provision, § 514(a), "any and all State laws [are displaced or superceded] insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a); see also *Christopher v. Mobil Oil Corporation,* 950 F.2d 1209, 1217 (5th Cir.), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992). Any state law "relates to" an ERISA plan "if it has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).[8]

The Fifth Circuit, in *Memorial Hospital System v. Northbrook Life Insurance Company,* 904 F.2d 236, 245 (5th Cir. 1990), outlined two unifying characteristics of cases finding ERISA preemption of a plaintiff's state law causes of action. See also *Cypress Fairbanks Medical Center Inc. v. Pan–American Life Insurance Company,* 110 F.3d 280, 283 (5th Cir.), *cert. denied,* 522 U.S. 862, 118 S.Ct. 167, 139 L.Ed.2d 110 (1997); *Foley v. Southwest Texas HMO, Inc.,* 226 F.Supp.2d 886, 894 (E.D.Tex.2002); *Baylor University Medical Center v. Arkansas Blue*

---

8. While this "relate to" standard must be interpreted expansively to give the words their broad common-sense meaning, see *Egelhoff v. Egelhoff ex rel. Breiner,* 532 U.S. 141, 146, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. 2890.

*Cross Blue Shield,* 331 F.Supp.2d 502, 507 (N.D.Tex.2004). Preemption of a plaintiff's state law causes of action has been found when: (1) the state law claim addresses areas of exclusive federal concern, and (2) the claim directly affects the relationship between traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Memorial Hospital,* 904 F.2d at 245; *Baylor,* 331 F.Supp.2d at 507; *Foley,* 226 F.Supp.2d at 894.

### C. *McSperitt's State Law Claims Against Hartford*

#### 1. *Breach of Contract*

■ McSperitt asserts that Hartford breached a contract with him by cancelling his LTD benefits, even though he continued to be disabled as defined in the plan. Petition ¶¶ 10–12, *attached to* Notice of Removal as Exhibit 1. McSperitt's breach of contract claims thus arise out of his claim for LTD benefits and are connected to his employee benefit plan. There is no question that McSperitt, as an ERISA participant, has the right to: (1) seek recovery of benefits under the plan; (2) enforce his rights as provided by the plan; or (3) obtain clarification of any possible future benefits to which he may be entitled under the plan. 29 U.S.C. § 1132(a)(1)(B). The law is clear, however, that "Section 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly 'supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Rozzell v. Security Services, Inc.,* 38 F.3d 819, 821 (5th Cir.1994) (quoting *Ingersoll–Rand Company v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)) (citations omitted).

Courts have held that ERISA completely preempts the specific state law claims McSperitt alleges. See, *e.g., Metropolitan Life,* 481 U.S. at 62–64, 107 S.Ct. 1542 (holding that ERISA completely preempt-

ed certain state law claims and finding that ERISA preempted an employee's common law tort and contract claim when the employee sought benefits under the employer's disability policy); *McNeil v. Time Insurance Company,* 205 F.3d 179, 191 (5th Cir.2000) (holding that ERISA preempts claims for breach of contract, breach of duty of good faith and fair dealing, and negligent misrepresentations), *cert. denied,* 531 U.S. 1191, 121 S.Ct. 1189, 149 L.Ed.2d 106 (2001); *Anderson v. Electronic Data Systems Corporation,* 11 F.3d 1311, 1315 (5th Cir.) (finding that a former employee's claims for demotion and wrongful termination were similarly preempted even though ERISA was only asserted as a defense), *cert. denied,* 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994); *Hogan v. Kraft Foods,* 969 F.2d 142, 144 (5th Cir. 1992) (holding that ERISA § 514(a) preempts claims for breach of contract, breach of duty of good faith and fair dealing, negligence, and intentional infliction of emotional distress). McSperitt's common law claim for breach of contract to recover benefits from his employer's ERISA plan are preempted by ERISA § 1132(a)(1)(B) which provides "an exclusive federal cause of action for the resolution of such claims," in effect recharacterizing the claims as federal claims. *Degan v. Ford Motor Company,* 869 F.2d 889, 893 (5th Cir.1989) (citation omitted). In sum, the court holds, as a matter of law, that McSperitt's contract claims against Hartford seek to enforce matters Congress intended to be regulated exclusively by ERISA. Accordingly, Hartford's motion for summary judgment on this basis must be granted.

#### 2. *Violations of the Texas Deceptive Practices and Trade Act*

■ McSperitt's claims against Hartford for breach of the duty of good faith and fair dealing and for alleged violations of the Texas DTPA are likewise preempt-

ed. The Fifth Circuit has concluded that ERISA preempts claims brought under the Texas DTPA for failure to pay or misrepresenting benefits under an ERISA plan because such claims "relate to" the plan. *Hogan*, 969 F.2d at 144; *Boren v. N.L. Industries, Inc.*, 889 F.2d 1463, 1465–66 (5th Cir.1989) (holding that ERISA preempts the Texas DTPA because plaintiff "reli[ed] on state law to advance his complaint that his benefits under the plan were terminated"), *cert. denied*, 497 U.S. 1029, 110 S.Ct. 3283, 111 L.Ed.2d 792 (1990); see also *Ramirez*, 890 F.2d at 762–64 (finding that the plaintiff's efforts to collect his medical benefits based on a provision of the Texas Insurance Code, which incorporates the Texas DTPA, were related to his employer's plan and thus preempted by ERISA). ERISA therefore preempts McSperitt's claims for breach of the duty of good faith and fair dealing and for alleged violations of the Texas DTPA. Hartford's motion for summary judgment on this ground is granted.

### 3. *Violations of the Texas Insurance Code*

■ Hartford asserts that McSperitt's claims based on provisions of the Texas Insurance Code are preempted by ERISA. Motion for Summary Judgment at 13. The Fifth Circuit has consistently held that § 514(a) preempts claims brought under Article 21.21 of the Texas Insurance Code. See *Hogan*, 969 F.2d at 144–45; *Hansen v. Continental Insurance Company*, 940 F.2d 971, 979 (5th Cir.1991) (holding that claims for misrepresentation, fraud and Texas DTPA violations brought pursuant to Article 21.21 of the Texas Insurance Code were completely preempted

by ERISA even if the result left the plaintiff with no adequate remedy for fraud); *Ramirez*, 890 F.2d at 763–64.[9] Although ERISA provides a savings clause for statutes which "regulate insurance," the Fifth Circuit has held that ERISA "preempts state statutes that provide a private right of action for the improper handling of insurance claims." *Ramirez*, 890 F.2d at 764; see also *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 50–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Fifth Circuit has determined that ERISA preempts claims under Article 21.21 because it does not "regulate insurance" as defined in ERISA. *Ramirez*, 890 F.2d at 763. While Article 21.21 is explicitly directed toward the insurance industry, it "incorporates wholesale the [Texas DTPA], a law of general application, and provides a remedy for violations of that law by an insurance company." *Id.* Article 21.21 merely delineates illegal insurance practices; it does not transfer or spread policyholder risk. *Id.* Accordingly, McSperitt's Texas Insurance Code claims are preempted by ERISA, and Hartford's motion for summary judgment on this ground is granted.

### D. *Hartford's Decision to Deny McSperitt's Claim*

McSperitt devotes his entire response brief to arguing a single issue—whether Hartford's decision to terminate his LTD benefits was correct—and fails to address ERISA preemption. *See generally* McSperitt's Response. According to this court's scheduling order, the deadline for submitting amended pleadings in this lawsuit was November 10, 2004. *See* Order

9. Courts have also analyzed Article 21.55 of the Texas Insurance Code under § 502(a)(1)(B) to find preemption. See *Salameh v. Provident Life & Accident Insurance Company*, 23 F.Supp.2d 704, 718 (S.D.Tex.

1998) ("Because the essence of [the] suit seeks the recovery of benefits or otherwise relates to an employee benefit plan, [the] state law claims brought under the Texas Insurance Code are preempted by ERISA.").

Establishing Schedule and Certain Pretrial Requirements ("Scheduling Order") (August 10, 2004). Since McSperitt failed to amend his pleadings to assert an ERISA claim,[10] the court need not address the issue of whether Hartford's decision to terminate McSperitt's LTD benefits was correct. Nevertheless, even if McSperitt had asserted an ERISA claim, he would still not be entitled to prevail. In analyzing a claim for benefits allegedly due under an ERISA plan, the district court reviews the plan administrator's determination for abuse of discretion when the plan expressly gives the administrator discretionary authority.[11] *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir.2004).

■ In this case, there was evidence in the administrative record that McSperitt was not limited from performing the material and substantial duties of his job. Specifically, Dr. Walker has consistently stated that McSperitt was capable of performing a sedentary job with some limitations. *See* Administrative Record at H00330–31, H00671, H00675, H00646–49. Additionally, video surveillance taken of McSperitt in 1999 revealed that he had physical abilities even beyond those reported by Dr. Walker. See *id.* at H00213. An independent psychological evaluation performed by Dr. Rogers indicated that McSperitt "was feigning both his mental disorders and cognitive problems" based on his responses to objective testing designed to detect such action. Reply Brief at 16; Administrative Record at H00158–68. As a result, Dr. Rogers concluded

that McSperitt did not suffer from any mental or psychological impairment that would prevent him from returning to full-time employment. *See* Administrative Record at H00158–68. Given Dr. Walker's repeated assessments and the majority of evidence in the administrative record, it was not an abuse of discretion for Hartford to determine that McSperitt's condition, while indeed severe, did not meet the plan definition of totally disabled.

### III.   *CONCLUSION*

For the reasons discussed above, all of McSperitt's state law claims are preempted by ERISA, and the defendant's motion for summary judgment on those claims is **GRANTED**. Furthermore, even if the court assumes that McSperitt is attempting to assert a claim for benefits under 29 U.S.C. § 1132(a)(1)(B), the summary judgment record demonstrates that Hartford did not abuse its discretion as claims administrator in denying such a claim. Judgment will therefore be entered in favor of Hartford.

**SO ORDERED.**

---

**10.** In order to determine whether McSperitt has adequately stated a claim for wrongful denial of plan benefits under § 502(a)(1)(B) of ERISA, the court only reviews McSperitt's claims as alleged in his state petition.

**11.** In this context, the "abuse of discretion" standard is synonymous with the "arbitrary and capricious" standard. See *Meditrust Financial Services Corporation v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214 (5th Cir.1999) ("[T]here is only a 'semantic, not a substantive, difference' between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context.").