**CHRISTUS HEALTH GULF COAST,** Christus Health Southeast Texas, Gulf Coast Division, Inc., Memorial Hermann Hospital System and Baptist Hospitals of Southeast Texas, Appellants,

v.

**AETNA, INC. and Aetna Health, Inc., Appellees.**

No. 14–09–01017–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 17, 2011.

David E. Warden, Esq., Eric Paul Chenoweth, Scott M. Clearman, Brian Dean Walsh, Brent Taylor Caldwell, Houston, for appellants.

Dimitri Zgourides, John B. Shely, Houston, for appellees.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

JEFFREY V. BROWN, Justice.

In this appeal, a group of hospitals challenge the trial court's grant of summary judgment on the hospitals' statutory claims for prompt-pay penalties in favor of a health maintenance organization, or HMO. Specifically, Christus Health Gulf Coast, Christus Health Southeast Texas, Gulf Coast Division, Inc., Memorial Hermann Hospital System, and Baptist Hospitals of Southeast Texas (collectively, the "hospitals") contend Aetna Health, Inc., an HMO, and its parent company, Aetna, Inc. (collectively, "Aetna"), are statutorily liable under Texas Insurance Code article 20A.18B (the "Prompt Pay Statute") for failing to timely pay claims for healthcare services provided to Aetna's Medicare HMO enrollees under agreements between the Hospitals and an intermediary that failed to pay the hospitals. We hold that liability under the Prompt Pay Statute is predicated on the existence of a contract between the provider and the HMO and, in the absence of a contractual relationship between any of the hospitals and Aetna, the trial court did not err by denying the hospitals' partial motion for summary judgment and granting Aetna's cross-motion for summary judgment. We therefore affirm.

### I

In the early 1990s, Sanus Health Plan, Inc., an HMO, owned and operated NYL-Care Health Plans of the Gulf Coast, Inc. Sanus contracted with the federal Health Care Financing Administration ("HCFA") to provide Medicare + Choice benefits to eligible persons who enrolled in its NYL-Care 65 program.[1] Under this contract,

---

1. The Health Care Financing Administration is now known as the Centers for Medicare and Medicaid Services. *See Christus Health*

*Gulf Coast v. Aetna, Inc.,* 237 S.W.3d 338, 339 & n. 1 (Tex.2007). The *Christus* opinion details the relationship between the Medicare

the HCFA made capitation payments[2] to Sanus, and in return, Sanus became responsible for its NYLCare 65 enrollees' benefits. Aetna later acquired responsibility for the NYLCare 65 program.

In 1993, Sanus contracted with IPA Management Associates, Inc., doing business as North American Medical Management of Texas ("NAMM") to perform administrative services, including claims processing and other services. In 1996, an affiliate of NAMM, IPA Management Services ("Management Services") was formed as a physician-controlled Approved Nonprofit Health Corporation, or "ANHC," under former section 5.01 of the Texas Medical Practices Act, for the purpose of arranging for or providing healthcare services.[3] The hospitals contracted with Management Services to provide hospital services to NYLCare 65 enrollees in return for payments based on rates specified in each contract. NAMM processed claims on behalf of its affiliate Management Services. The hospitals had no contracts with Aetna.

By August 2000, Management Services apparently became insolvent and allegedly failed to pay the hospitals over $13 million invoiced for services the hospitals provided to NYLCare 65 enrollees. In 2002, the hospitals sued Aetna, seeking damages for the allegedly unpaid healthcare services. The hospitals' claims included a suit on an account, breach of contract, quantum meruit, and breach of fiduciary duties. The hospitals later added a claim for violation of the Insurance Code's Prompt Pay Statute.

Aetna filed a plea to the jurisdiction, contending the trial court lacked subject-matter jurisdiction over the hospitals' claims because they were governed exclusively by the Medicare Act and the hospitals had not pursued Medicare's administrative remedies. The trial court granted the plea, and this court affirmed the trial court's judgment. *Christus Health Gulf Coast v. Aetna*, 167 S.W.3d 879 (Tex.App.-Houston [14th Dist.] 2005, pet. granted). On review, the Texas Supreme Court determined that the hospitals' claims were within the trial court's jurisdiction because the dispute did not concern whether there was Medicare coverage of enrollees, but only whether Aetna was potentially liable to the hospitals for Management Services or NAMM's default.[4] *See Christus Health Gulf Coast*, 237 S.W.3d 338, 341, 343–45 (Tex.2007). Accordingly, the court re-

---

program at issue and HMOs like Aetna, and so it will not be repeated here. *See id.* at 339–40.

**2.** The Texas Insurance Code currently defines capitation as "a method of compensating a physician or provider for arranging for or providing a defined set of covered health care services to certain enrollees for a specified period that is based on a predetermined payment per enrollee for the specified period, without regard to the quantity of services actually provided." Tex. Ins. Code § 843.002(4). Federal Medicare regulations similarly define capitation as "a set dollar payment per patient per unit of time (usually per month) paid to a physician or physician group to cover a specified set of services and administrative costs without regard to the actual number of services provided" including

"the physician's own services, referral services, or all medical services." 42 C.F.R. § 422.208(a) (2011).

**3.** According to Aetna, Management Services and NYLCare entered into an agreement providing that NYLCare would make monthly capitation payments to Management Services, and in return, Management Services agreed to guarantee enrollees' access to medical benefits by contracting with providers and hospitals to provide healthcare services to NYLCare 65 enrollees.

**4.** In *Christus Health Gulf Coast*, the court noted that the hospitals referred to NAMM and Management Services collectively as "NAMM." *See* 237 S.W.3d at 340 n. 6. The Hospitals continue to do so in their briefing below and in this court.

manded the case to the trial court. *Id.* at 345.

Back in the trial court, the hospitals moved for summary judgment, asserting only the claim that Aetna was liable for NAMM's violation of the Prompt Pay Statute and seeking a judgment against Aetna for $13,067,759.19, as well as attorneys' fees and interest. Aetna responded and filed its own cross-motion for summary judgment.[5] Among other things, Aetna contended that, between January 10, 2000, and mid-August 2000, it paid Management Services more than $53,000,000 in capitation payments, and these payments constituted the extent of its liability. Aetna also contended that it was not liable for NAMM's failure to pay the hospitals under the Prompt Pay Statute and, in any event, the Hospitals failed to comply with the statute's requirements. Aetna also moved for a continuance on the ground that it was entitled to discovery from the hospital's damages witness. Rather than grant Aetna's motion for continuance, the trial court converted the hospitals' motion to a motion for partial summary judgment and narrowed the issues, with the consent of the parties, to the question of Aetna's potential liability under the Prompt Pay Statute. The trial court denied the hospitals' motion for partial summary judgment and granted Aetna's cross-motion for summary judgment.

## II

### A

We review summary judgments de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005). On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law.

*City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000).

A party moving for traditional summary judgment must establish that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex.2003). If the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine issue of material fact sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam). We consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex.2006). When, as here, the order granting summary judgment does not specify the grounds on which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

Statutory construction is a question of law which we also review de novo. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008). We construe statutory language to ascertain and effectuate legislative intent, and we consider the plain and common meaning of each word in the statute. *Tex. Mut. Ins. Co. v. Sonic Sys. Int'l, Inc.,* 214 S.W.3d 469, 476 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). We also view statutory terms in context and

---

5. In their motion for summary judgment and response to Aetna's cross-motion, the Hospitals made no reference to their other pleaded claims, and on appeal do not dispute that those claims were waived below. Therefore, the trial court's judgment disposed of the Hospital's only claim and is a final, appealable judgment.

give them full effect. *Id.* We presume every word of a statute was used for a purpose, and every word excluded from a statute was excluded for a purpose. *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981); *Eastland v. Eastland*, 273 S.W.3d 815, 821 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Finally, in determining the plain meaning of a statute, we read the words in context and construe the language according to the rules of grammar and common usage. *See* Tex. Gov't Code § 311.011(a).

**B**

The hospitals contend Aetna's refusal to pay them for services provided to Aetna's NYLCare enrollees violates the Texas Prompt Pay Statute. Under the applicable version of the Texas Insurance Code's HMO Act, the Prompt Pay Statute at issue provided as follows:

(c) Not later than the 45th day after the date that the health maintenance organization receives a clean claim from a physician or provider, the health maintenance organization shall:

(1) pay the total amount of the claim in accordance with the contract between the physician or provider and the health maintenance organization;

(2) pay the portion of the claim that is not in dispute and notify the physician or provider in writing why the remaining portion of the claim will not be paid; or

(3) notify the physician or provider in writing why the claim will not be paid.

Tex. Ins. Code art. 20A.18B(c).[6] A "clean claim" means "a completed claim, as determined under Texas Department of Insurance rules, submitted by a physician or provider for medical care or health care services under a health care plan." *Id.* art. 20A.18B(a).[7] An HMO that violates this statute is liable to a provider for the "full amount of billed charges submitted on the claim or the amount payable under the contracted penalty rate, less any amount previously paid or any charge for a service that is not covered by the health care plan." *Id.* art. 20A.18B(f). In addition, a provider may recover reasonable attorney's fees in an action to recover payment under this provision. *Id.* art. 20A.18B(g).

The hospitals acknowledge they have no contracts with Aetna, but contend the Prompt Pay Statute does not require contractual privity. The hospitals first point to the language of article 20A.18B(f) to argue that a provider's ability to recover either "billed charges" or the "contracted penalty rate" indicates that contractual privity is not required, because if it were, there would be no reason for the statute to permit a provider to recover "billed charges." Instead, they argue, the statute could simply provide for recovery of a contracted-for penalty rate. This argument does not advance the hospitals' position, however, because the statute merely provides that an HMO will be liable for either a contracted-for "penalty" or, if the parties have not provided for a penalty in their contract, the "full billed charges" rather than any discounts provided in the parties' contract. Including "full billed charges" as an alternative to a contractual penalty does not necessarily lead to the

---

6. Act of May 29, 1999, 76th Leg., R.S., ch. 1343, § 1, 1999 Tex. Gen. Laws 4556, 4556–57, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, 2001 Tex. Gen. Laws 3658, 3793–95 (current version at Tex. Ins. Code § 843.338). Consistent with the parties' briefing, and unless otherwise specified, citations to the Insurance Code will be to the 2000 version of the code.

7. The parties strenuously dispute whether the hospitals' claims were "clean claims" entitled to payment, but our disposition of the case makes it unnecessary for us to reach this issue.

conclusion that contractual privity is not required to impose liability. Nor does this construction of the statute render the phrase "full billed charges" meaningless, as the hospitals contend would be the case if the provision was construed to require contractual privity.

■ Further, a statute must be read as a whole. *See Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). Article 20A.18B(f) provides that the Prompt Pay Statute imposes liability on "[a] health maintenance organization that violates Subsection (c) or (e) of this section." Tex. Ins. Code art. 20A.18B(f). The hospitals allege no violation of subsection (e). Subsection (c), the basis for the hospitals' claims, is violated only if an HMO fails to timely "pay the total amount of the claim *in accordance with the contract between the physician or provider and the health maintenance organization." Id.* art. 20A.18B(c)(1) (emphasis added).[8] Thus, the plain language of the statute requires that there be contractual privity between the HMO and the provider or physician to invoke the Prompt Pay Statute.

The hospitals argue that the only court to have previously examined the issue concluded that contractual privity is not required for an HMO to be responsible for payment under the Prompt Pay Statute. *See Foley v. Sw. Texas HMO, Inc.,* 226 F.Supp.2d 886, 890 (E.D.Tex.2002) (stating that "[n]othing in subsection (f) [of the Prompt Pay Statute] requires contractual privity between a physician and the HMO to exist before the physician may bring suit against the HMO for violating subsec-

tion (c)"). In *Foley,* a group of physicians sued several HMOs to recover payments for services they provided for the HMO's enrollees through NAMM. *Id.* The issue before the court was whether the plaintiffs' claims were preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.* As the court noted, the merits of the claims were not before it. *Id.* at 892 ("The plaintiffs' actual ability to recover under the facts of this case as applied to the state law through which they attempt to recover is irrelevant to the issue of preemption."). The court ultimately determined that the plaintiffs' suit for breach of the Prompt Pay Statute was not preempted by ERISA because the plaintiffs were "merely attempting to hold the defendants liable for the obligations they undertook in a contract." *Id.* at 896. The court noted, however, "[i]n the end, the lack of contractual privity may mean that the plaintiffs are unable to recover under this statute." *Id.* at 892. Consequently, we do not find *Foley* dispositive of the hospitals' claim on the merits.

The hospitals next contend subsection (n) of the Prompt Pay Statute imposes liability on Aetna. This subsection provides that the Prompt Pay Statute "applies to a person with whom a health maintenance organization contracts to process claims or to obtain the services of physicians and providers to provide health care services to health care plan enrollees." Tex. Ins. Code art. 20A.18B(n). This subsection, the hospitals posit, makes the Prompt Pay Statute applicable to NAMM and Management Services, and, in turn,

8. At oral argument, counsel for the Hospitals also argued that subsection (c) of the Prompt Pay Statute reflects that contractual privity is not required because subparts (c)(2) and (c)(3) do not refer to a contract, but only require a written response, which Aetna never provided. But when read together, it is apparent that subparts (c)(1), (c)(2), and (c)(3) provide three ways to timely respond to "the

claim," meaning the claim contemplated under "the contract between the ... provider and the health maintenance organization." *See* Tex. Ins. Code art. 20A.18B(c)(1)-(3). Specifically, the HMO may pay the total amount of "the claim" in accordance with the parties' contract, pay a portion of "the claim" that is not disputed, or notify the provider in writing why "the claim" will not be paid.

makes Aetna directly liable to pay the Hospitals. This interpretation, however, is inconsistent with the requirement of contractual privity reflected in subsection (c)(1).

■ We conclude that subsection (n) enables a provider to bring an action for violation of the Prompt Pay Statute against a "person" with whom the provider has contracted to process claims or to obtain the provider's services for the HMO's enrollees. Effectively, article 20A.18B would be read to substitute the "person" with whom the provider contracts for "HMO," and would enable providers like the hospitals to recover under the Prompt Pay Statute when that "person" violates the statute. This conclusion is consistent with the statute's imposition of deadlines upon the "receipt" of a claim "from a physician or provider." If the provider's contract is with an intermediary (which also contracted with the HMO), it follows that this intermediary would be the "person" actually receiving the claims from the physician or provider for purposes of the Prompt Pay Statute, and therefore would be the person on whom the statute imposes liability. In this case, the hospitals' contracts were with Management Services or NAMM, not Aetna. Accordingly, Management Services or NAMM—not Aetna— would be the proper defendant in a Prompt Pay Statute suit.

■ Our conclusion that the Prompt Pay Statute does not impose liability on Aetna in the absence of a contract between Aetna and the hospitals is further buttressed by the Legislature's subsequent enactment of an amendment to the HMO Act to provide an avenue for recovery against an HMO for an intermediary's violation of the Prompt Pay Statute even when the HMO is not contractually liable. This amendment authorizes the Department of Insurance to require an HMO to "reassum[e] the functions delegated to the delegated entity,[9] including claims payments for services previously rendered to enrollees of the [HMO]" upon receipt of a notice from the HMO that the delegated entity is not operating in accordance with its written agreement or is operating in a condition that renders the continuance of its business hazardous to the enrollees. Act of May 17, 2001, 77th Leg., R.S., ch. 550, § 4, sec. 18C(g), (*l*)(1), 2001 Tex. Gen. Laws 1041, 1046–47, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 25, sec. 26(a)(1), 2003 Tex. Gen. Laws 3611, 4138. Under this legislation, an HMO may be required to assume its delegated entity's responsibilities, even if it has fulfilled its own responsibilities, but only at the discretion of the insurance commissioner. *See id.* This amendment applied only to contracts entered into on or after January 1, 2002, and so does not apply to the hospitals' contracts from years earlier. Act of May 17, 2001, 77th Leg., R.S., ch. 550, § 5, 2001 Tex. Gen. Laws 1041, 1050.

The Legislature would not have needed to pass this legislation if the existing statutes already provided for such relief. *See State v. Eversole,* 889 S.W.2d 418, 425 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (when the Legislature enacts an amendment, the Legislature is presumed to change the law). Even with this change, we note that the Legislature provided only for discretionary action by the commissioner, not a private cause of action in favor of physicians or providers.

---

9. A "delegated entity" means "an entity, other than a[n HMO] authorized to do business under this Act that by itself, or through subcontracts with one or more entities, undertakes to arrange for or to provide medical care or health care to an enrollee in exchange for a predetermined payment on a prospective basis and that accepts responsibility to perform on behalf of the [HMO] any function regulated by this Act...." Act of May 17, 2001, 77th Leg., R.S., ch. 550, § 2, 2001 Tex. Gen. Laws 1041, 1041.

The Hospitals further argue that their interpretation of the Prompt Pay Statute is consistent with Aetna's obligations under federal law, citing to a particular Medicare regulation requiring an HMO to

[i]ndemnify the beneficiary enrollee for payment of any fees that are the legal obligation of the [HMO] for services furnished by providers that do not contract, or that have not otherwise entered into an agreement with the [HMO], to provide services to the organization's beneficiary enrollees.

42 C.F.R. § 422.502(g)(1)(ii) (1999);[10] *see also* 42 U.S.C. § 1395w–25 (providing that HMO will assume full financial risk for healthcare services required to be provided to Medicare beneficiaries). These regulations and statutes, however, are directed to indemnification of Medicare enrollees, not providers like the hospitals. *See Christus*, 237 S.W.3d at 339–40, 344–45. Here, the hospitals have represented that they are not pursuing payment as assignees of Aetna's NYLCare enrollees; therefore, these provisions do not support the hospitals' argument. Further, as Aetna points out, federal regulations allowed NYLCare to delegate certain functions downstream. *See* 42 U.S.C. § 1395w–25(b)(4) (1997) (permitting an HMO to "make arrangements with ... any combination of such [healthcare professionals] or institutions to as-

sume all ... of the financial risk on a prospective basis for the provision of basic health services...."). The hospitals acknowledged in their summary-judgment briefing that, consistent with this authority, NYLCare (later Aetna) made monthly capitation payments to NAMM (or its affiliate Medical Services), and in turn, NAMM or Medical Services agreed to be responsible for directly paying the hospitals for covered services rendered to NYLCare 65 enrollees.[11] Thus, the federal law on which the hospitals rely does not support their argument.

Finally, the hospitals assert that Aetna's agreements with NAMM or Management Services "may not be construed to limit in any way the [HMO's] authority or responsibility, including financial responsibility, to comply with all statutory and regulatory requirements." *See* Tex. Ins. Code art. 20A.18C(a)(1)(C)(4). Specifically, the hospitals contend this provision prohibits an HMO from delegating its financial responsibility to another organization, regardless of a contract to delegate some of its other responsibilities. But article 20A.18C does not create a privately enforceable claim. Instead, it dictates the terms of an HMO's agreement with an intermediary. It requires, for example, that the delegation agreement be in writing and that it be filed with the Texas Department of Insurance. *See id.* art. 20A.18C(a). The provision on which the hospitals rely provides:

**10.** Section 422.502 of the 1999 Code of Federal Regulations is entitled "Contract provisions" and specifies the provisions that must be contained in the contract between the HMO and HCFA.

**11.** For the same reason, we do not find persuasive the hospitals' citation of *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002). In *Rush*, the court determined that a provision of the Illinois HMO Act was not preempted by ERISA; it did not address an HMO's liability for any claim on the merits. *See id.* at 386–

87, 122 S.Ct. 2151 (holding state statute requiring HMOs to provide independent review of treatment decisions was not preempted by ERISA). In this context, the court merely noted that capitation contracts do not relieve an HMO of its obligations *to its beneficiaries. Id.* at 371, 122 S.Ct. 2151 ("The HMO is still bound to provide medical care to its members, and this is so regardless of the ability of physicians or third-party insurers to honor their contracts with the HMO."). As the Hospitals concede, they are not asserting claims on behalf of NYLCare 65 enrollees, so the *Rush* court's statements do not help them.

The *written agreement must contain:*

\* \* \*

(4) a provision that the delegation agreement may not be construed to limit in any way the [HMO's] authority or responsibility, including financial responsibility, to *comply with all statutory and regulatory requirements* . . .

*Id.* art. 20A.18C(a)(4) (emphasis added). The hospitals point to no evidence that NYLCare violated article 20A.18C by failing to file a written agreement with the required provisions. And to the extent the hospitals contend Aetna violated its responsibility to "comply with all statutory and regulatory requirements" by failing to comply with the Prompt Pay Statute, we have already rejected the hospitals' claim that Aetna is liable to them under that statute.

■■■ In requiring a contract before imposing liability, the Prompt Pay Statute is consistent with existing healthcare law. A healthcare plan, like an insurance policy, is a contract. The named beneficiary, as a party to the contract, may sue on it, but a stranger to the contract may not. *Cf. Hermann Hosp. v. Liberty Life Assurance Co. of Boston,* 696 S.W.2d 37, 40 (Tex. App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Doss v. Roberts,* 487 S.W.2d 839, 841 (Tex.Civ.App.-Texarkana 1972, writ ref'd n.r.e.). Medical providers cannot, on their own account, enforce the terms of a healthcare plan. *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir.2004) (hospital did not have standing under ERISA to sue in its own right for health care benefits). Providers must sue through an assignment to stand in the shoes of a beneficiary (their patient), or they must sue on their own provider contracts. *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.,* 579 F.3d 525, 529 n. 3 (5th Cir.2009) (finding the provider "clearly has standing" to seek benefits under the health care plans, because the provider's patients had assigned their rights under those plans); *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1290 n. 13 (5th Cir.1988) (stating that without an assignment "providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary"). But the hospitals do not contend that they are pursuing their patients' claims through assignments, and they have stipulated that they have no contracts with Aetna.

In summary, we find the hospitals' arguments unavailing and conclude that the plain language of the Prompt Pay Statute requires contractual privity between the HMO and the provider for purposes of a claim under subsection (f) of that statute. *See* Tex. Ins. Code art. 20A.18B(c), (f). Because the trial court properly could have denied the hospitals' partial motion for summary judgment and granted Aetna's cross-motion for summary judgment on that basis, the trial court did not err. We overrule the Hospitals' issue.

\*       \*       \*

We affirm the trial court's judgment.