Affirmed and Opinion filed May 17,
2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-01017-CV



Christus Health
Gulf Coast, Christus Health Southeast Texas, Gulf Coast Division, Inc.,
Memorial Hermann Hospital System and Baptist Hospitals of Southeast Texas, Appellants 

v.

Aetna, Inc. and
Aetna Health, Inc., Appellees 



On Appeal from
the 157th District Court

Harris County, Texas

Trial Court
Cause No. 2002-39946



 

OPINION

            In
this appeal, a group of hospitals challenge the trial court’s grant of summary
judgment on the hospitals’ statutory claims for prompt-pay penalties in favor
of a health maintenance organization, or HMO.  Specifically, Christus Health
Gulf Coast, Christus Health Southeast Texas, Gulf Coast Division, Inc.,
Memorial Hermann Hospital System, and Baptist Hospitals of Southeast Texas
(collectively, the “hospitals”) contend Aetna Health, Inc., an HMO, and its
parent company, Aetna, Inc. (collectively, “Aetna”), are statutorily liable under
Texas Insurance Code article 20A.18B (the “Prompt Pay Statute”) for failing to timely
pay claims for healthcare services provided to Aetna’s Medicare HMO enrollees
under agreements between the Hospitals and an intermediary that failed to pay
the hospitals.  We hold that liability under the Prompt Pay Statute is
predicated on the existence of a contract between the provider and the HMO and,
in the absence of a contractual relationship between any of the hospitals and
Aetna, the trial court did not err by denying the hospitals’ partial motion for
summary judgment and granting Aetna’s cross-motion for summary judgment.  We therefore
affirm.

I

            In
the early 1990s, Sanus Health Plan, Inc., an HMO, owned and operated NYLCare
Health Plans of the Gulf Coast, Inc.  Sanus contracted with the federal Health
Care Financing Administration (“HCFA”) to provide Medicare + Choice benefits to
eligible persons who enrolled in its NYLCare 65 program.[1]  Under this
contract, the HCFA made capitation payments[2]
to Sanus, and in return, Sanus became responsible for its NYLCare 65 enrollees’
benefits.  Aetna later acquired responsibility for the NYLCare 65 program. 

            In
1993, Sanus contracted with IPA Management Associates, Inc., doing business as
North American Medical Management of Texas (“NAMM”) to perform administrative
services, including claims processing and other services.  In 1996, an
affiliate of NAMM, IPA Management Services (“Management Services”) was formed
as a physician-controlled Approved Nonprofit Health Corporation, or “ANHC,” under
former section 5.01 of the Texas Medical Practices Act, for the purpose of
arranging for or providing healthcare services.[3] 
The hospitals contracted with Management Services to provide hospital services
to NYLCare 65 enrollees in return for payments based on rates specified in each
contract.  NAMM processed claims on behalf of its affiliate Management
Services.  The hospitals had no contracts with Aetna.

            By
August 2000, Management Services apparently became insolvent and allegedly
failed to pay the hospitals over $13 million invoiced for services the hospitals
provided to NYLCare 65 enrollees.  In 2002, the hospitals sued Aetna, seeking
damages for the allegedly unpaid healthcare services.  The hospitals’ claims
included a suit on an account, breach of contract, quantum meruit, and breach
of fiduciary duties.  The hospitals later added a claim for violation of the Insurance
Code’s Prompt Pay Statute. 

            Aetna
filed a plea to the jurisdiction, contending the trial court lacked
subject-matter jurisdiction over the hospitals’ claims because they were
governed exclusively by the Medicare Act and the hospitals had not pursued
Medicare’s administrative remedies.  The trial court granted the plea, and this
court affirmed the trial court’s judgment.  Christus Health Gulf Coast v.
Aetna, 167 S.W.3d 879 (Tex. App.—Houston [14th Dist.] 2005, pet. granted). 
On review, the Texas Supreme Court determined that the hospitals’ claims were
within the trial court’s jurisdiction because the dispute did not concern
whether there was Medicare coverage of enrollees, but only whether Aetna was
potentially liable to the hospitals for Management Services or NAMM’s default.[4]  See
Christus Health Gulf Coast, 237 S.W.3d 338, 341, 343–45 (Tex. 2007). 
Accordingly, the court remanded the case to the trial court.  Id. at 345. 


            Back
in the trial court, the hospitals moved for summary judgment, asserting only the
claim that Aetna was liable for NAMM’s violation of the Prompt Pay Statute and
seeking a judgment against Aetna for $13,067,759.19, as well as attorneys’ fees
and interest.  Aetna responded and filed its own cross-motion for summary
judgment.[5] 
Among other things, Aetna contended that, between January 10, 2000, and
mid-August 2000, it paid Management Services more than $53,000,000 in
capitation payments, and these payments constituted the extent of its
liability.  Aetna also contended that it was not liable for NAMM’s failure to
pay the hospitals under the Prompt Pay Statute and, in any event, the Hospitals
failed to comply with the statute’s requirements.  Aetna also moved for a
continuance on the ground that it was entitled to discovery from the hospital’s
damages witness.  Rather than grant Aetna’s motion for continuance, the trial
court converted the hospitals’ motion to a motion for partial summary judgment
and narrowed the issues, with the consent of the parties, to the question of
Aetna’s potential liability under the Prompt Pay Statute.  The trial court
denied the hospitals’ motion for partial summary judgment and granted Aetna’s
cross-motion for summary judgment.  

II

A

            We
review summary judgments de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  On cross-motions for summary judgment, each party
bears the burden of establishing that it is entitled to judgment as a matter of
law.  City of Garland v. Dallas Morning News, 22 S.W.3d 351, 356 (Tex.
2000).  

            A
party moving for traditional summary judgment must establish that no genuine
issue of material fact exists and it is entitled to judgment as a matter of
law.  See Tex. R. Civ. P. 166a(c); Provident Life & Accident Ins.
Co. v. Knott, 128 S.W.3d 211, 215–16 (Tex. 2003).  If the movant’s motion
and summary-judgment evidence facially establish its right to judgment as a
matter of law, the burden shifts to the nonmovant to raise a genuine issue of
material fact sufficient to defeat summary judgment.  M.D. Anderson Hosp.
& Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). 
We consider all the evidence in the light most favorable to the nonmovant,
crediting evidence favorable to the nonmovant if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.  Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).  When, as here, the
order granting summary judgment does not specify the grounds on which the trial
court relied, we must affirm the summary judgment if any of the independent
summary-judgment grounds is meritorious.  See FM Props. Operating Co. v.
City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

            Statutory
construction is a question of law which we also review de novo.  City of
Rockwall v. Hughes, 246 S.W.3d 621, 625 (Tex. 2008).  We construe statutory
language to ascertain and effectuate legislative intent, and we consider the
plain and common meaning of each word in the statute.  Tex. Mut. Ins. Co. v.
Sonic Sys. Int’l, Inc., 214 S.W.3d 469, 476 (Tex. App.—Houston [14th Dist.]
2005, pet. denied).  We also view statutory terms in context and give them full
effect.  Id.  We presume every word of a statute was used for a purpose,
and every word excluded from a statute was excluded for a purpose.  Cameron
v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981); Eastland
v. Eastland, 273 S.W.3d 815, 821 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).  Finally, in determining the plain meaning of a statute, we read the
words in context and construe the language according to the rules of grammar
and common usage.  See Tex. Gov’t Code § 311.011(a).  




B

            The
hospitals contend Aetna’s refusal to pay them for services provided to Aetna’s
NYLcare enrollees violates the Texas Prompt Pay Statute.  Under the applicable
version of the Texas Insurance Code’s HMO Act, the Prompt Pay Statute at issue
provided as follows:

            (c)       Not later than the 45th day after the
date that the health maintenance organization receives a clean claim from a
physician or provider, the health maintenance organization shall:

                        (1)       pay the total amount of
the claim in accordance with the contract between the physician or provider and
the health maintenance organization;

                        (2)       pay the portion of the
claim that is not in dispute and notify the physician or provider in writing
why the remaining portion of the claim will not be paid; or 

                        (3)       notify the physician or
provider in writing why the claim will not be paid.

Tex.
Ins. Code art. 20A.18B(c).[6]
 A “clean claim” means “a completed claim, as determined under Texas Department
of Insurance rules, submitted by a physician or provider for medical care or
health care services under a health care plan.”  Id. art. 20A.18B(a).[7]  An HMO
that violates this statute is liable to a provider for the “full amount of
billed charges submitted on the claim or the amount payable under the
contracted penalty rate, less any amount previously paid or any charge for a service
that is not covered by the health care plan.”  Id. art. 20A.18B(f).  In
addition, a provider may recover reasonable attorney’s fees in an action to
recover payment under this provision.  Id. art. 20A.18B(g).  

            The
hospitals acknowledge they have no contracts with Aetna, but contend the Prompt
Pay Statute does not require contractual privity.  The hospitals first point to
the language of article 20A.18B(f) to argue that a provider’s ability to
recover either “billed charges” or the “contracted penalty rate” indicates that
contractual privity is not required, because if it were, there would be no reason
for the statute to permit a provider to recover “billed charges.”  Instead,
they argue, the statute could simply provide for recovery of a contracted-for
penalty rate.  This argument does not advance the hospitals’ position, however,
because the statute merely provides that an HMO will be liable for either a
contracted-for “penalty” or, if the parties have not provided for a penalty in
their contract, the “full billed charges” rather than any discounts provided in
the parties’ contract.  Including “full billed charges” as an alternative to a
contractual penalty does not necessarily lead to the conclusion that
contractual privity is not required to impose liability.  Nor does this
construction of the statute render the phrase “full billed charges”
meaningless, as the hospitals contend would be the case if the provision was
construed to require contractual privity.  

            Further,
a statute must be read as a whole.  See Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 493 (Tex. 2001).  Article 20A.18B(f) provides that the Prompt Pay
Statute imposes liability on “[a] health maintenance organization that violates
Subsection (c) or (e) of this section.”  Tex. Ins. Code art. 20A.18B(f).  The hospitals
allege no violation of subsection (e).  Subsection (c), the basis for the hospitals’
claims, is violated only if an HMO fails to timely “pay the total amount of the
claim in accordance with the contract between the physician or provider and
the health maintenance organization.”  Id. art. 20A.18B(c)(1)
(emphasis added).[8] 
Thus, the plain language of the statute requires that there be contractual
privity between the HMO and the provider or physician to invoke the Prompt Pay
Statute.

            The
hospitals argue that the only court to have previously examined the issue
concluded that contractual privity is not required for an HMO to be responsible
for payment under the Prompt Pay Statute.  See Foley v. Sw. Texas
HMO, Inc., 226 F. Supp. 2d 886, 890 (E.D. Tex. 2002) (stating that
“[n]othing in subsection (f) [of the Prompt Pay Statute] requires contractual
privity between a physician and the HMO to exist before the physician may bring
suit against the HMO for violating subsection (c)”).  In Foley, a group
of physicians sued several HMOs to recover payments for services they provided
for the HMO’s enrollees through NAMM.  Id.  The issue before the court
was whether the plaintiffs’ claims were preempted under the Employee Retirement
Income Security Act of 1974 (“ERISA”).  Id.  As the court noted, the
merits of the claims were not before it.  Id. at 892 (“The plaintiffs’
actual ability to recover under the facts of this case as applied to the state
law through which they attempt to recover is irrelevant to the issue of
preemption.”).  The court ultimately determined that the plaintiffs’ suit for
breach of the Prompt Pay Statute was not preempted by ERISA because the
plaintiffs were “merely attempting to hold the defendants liable for the
obligations they undertook in a contract.”  Id. at 896.  The court
noted, however, “[i]n the end, the lack of contractual privity may mean that
the plaintiffs are unable to recover under this statute.”  Id. at 892. 
Consequently, we do not find Foley dispositive of the hospitals’ claim
on the merits.

            The
hospitals next contend subsection (n) of the Prompt Pay Statute imposes
liability on Aetna.  This subsection provides that the Prompt Pay Statute
“applies to a person with whom a health maintenance organization contracts to
process claims or to obtain the services of physicians and providers to provide
health care services to health care plan enrollees.”  Tex. Ins. Code art.
20A.18B(n).  This subsection, the hospitals posit, makes the Prompt Pay Statute
applicable to NAMM and Management Services, and, in turn, makes Aetna directly
liable to pay the Hospitals.  This interpretation, however, is inconsistent
with the requirement of contractual privity reflected in subsection (c)(1).  

            We
conclude that subsection (n) enables a provider to bring an action for
violation of the Prompt Pay Statute against a “person” with whom the provider
has contracted to process claims or to obtain the provider’s services for the
HMO’s enrollees.  Effectively, article 20A.18B would be read to substitute the “person”
with whom the provider contracts for “HMO,” and would enable providers like the
hospitals to recover under the Prompt Pay Statute when that “person” violates
the statute.  This conclusion is consistent with the statute’s imposition of
deadlines upon the “receipt” of a claim “from a physician or provider.”  If the
provider’s contract is with an intermediary (which also contracted with the
HMO), it follows that this intermediary would be the “person” actually receiving
the claims from the physician or provider for purposes of the Prompt Pay
Statute, and therefore would be the person on whom the statute imposes
liability.  In this case, the hospitals’ contracts were with Management
Services or NAMM, not Aetna.  Accordingly, Management Services or NAMM—not
Aetna—would be the proper defendant in a Prompt Pay Statute suit. 

            Our
conclusion that the Prompt Pay Statute does not impose liability on Aetna in
the absence of a contract between Aetna and the hospitals is further buttressed
by the Legislature’s subsequent enactment of an amendment to the HMO Act to
provide an avenue for recovery against an HMO for an intermediary’s violation
of the Prompt Pay Statute even when the HMO is not contractually liable.  This amendment
authorizes the Department of Insurance to require an HMO to “reassum[e] the
functions delegated to the delegated entity,[9]
including claims payments for services previously rendered to enrollees of the
[HMO]” upon receipt of a notice from the HMO that the delegated entity is not
operating in accordance with its written agreement or is operating in a
condition that renders the continuance of its business hazardous to the
enrollees.  Act of May 17, 2001, 77th Leg., R.S., ch. 550, § 4, sec. 18C(g),
(l)(1), 2001 Tex. Gen. Laws 1041, 1046–47, repealed by Act of May 22,
2003, 78th Leg., R.S., ch. 1274, § 25, sec. 26(a)(1), 2003 Tex. Gen. Laws 3611,
4138.  Under this legislation, an HMO may be required to assume its delegated
entity’s responsibilities, even if it has fulfilled its own responsibilities,
but only at the discretion of the insurance commissioner.  See id.  This
amendment applied only to contracts entered into on or after January 1, 2002,
and so does not apply to the hospitals’ contracts from years earlier.  Act of May
17, 2001, 77th Leg., R.S., ch. 550, § 5, 2001 Tex. Gen. Laws 1041, 1050.  

            The
Legislature would not have needed to pass this legislation if the existing statutes
already provided for such relief.  See State v. Eversole, 889 S.W.2d
418, 425 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d) (when the
Legislature enacts an amendment, the Legislature is presumed to change the
law).  Even with this change, we note that the Legislature provided only for
discretionary action by the commissioner, not a private cause of action in
favor of physicians or providers. 

            The
Hospitals further argue that their interpretation of the Prompt Pay Statute is
consistent with Aetna’s obligations under federal law, citing to a particular Medicare
regulation requiring an HMO to

[i]ndemnify the beneficiary enrollee for payment of any
fees that are the legal obligation of the [HMO] for services furnished by
providers that do not contract, or that have not otherwise entered into an
agreement with the [HMO], to provide services to the organization’s beneficiary
enrollees.

42
C.F.R. § 422.502(g)(1)(ii) (1999);[10]
see also 42 U.S.C. § 1395w-25 (providing that HMO will assume full
financial risk for healthcare services required to be provided to Medicare
beneficiaries).  These regulations and statutes, however, are directed to
indemnification of Medicare enrollees, not providers like the hospitals.  See
Christus, 237 S.W.3d at 339–40, 344–45.  Here, the hospitals have represented
that they are not pursuing payment as assignees of Aetna’s NYLCare enrollees;
therefore, these provisions do not support the hospitals’ argument.  Further,
as Aetna points out, federal regulations allowed NYLCare to delegate certain
functions downstream.  See 42 U.S.C. § 1395w-25(b)(4) (1997) (permitting
an HMO to “make arrangements with . . . any combination of such [healthcare
professionals] or institutions to assume all . . . of the financial risk on a
prospective basis for the provision of basic health services . . . .”).  The hospitals
acknowledged in their summary-judgment briefing that, consistent with this
authority, NYLCare (later Aetna) made monthly capitation payments to NAMM (or
its affiliate Medical Services), and in turn, NAMM or Medical Services agreed
to be responsible for directly paying the hospitals for covered services
rendered to NYLCare 65 enrollees. [11] 
Thus, the federal law on which the hospitals rely does not support their
argument.

            Finally,
the hospitals assert that Aetna’s agreements with NAMM or Management Services
“may not be construed to limit in any way the [HMO’s] authority or
responsibility, including financial responsibility, to comply with all
statutory and regulatory requirements.”  See Tex. Ins. Code art.
20A.18C(a)(1)(C)(4).  Specifically, the hospitals contend this provision
prohibits an HMO from delegating its financial responsibility to another
organization, regardless of a contract to delegate some of its other
responsibilities.  But article 20A.18C does not create a privately enforceable
claim.  Instead, it dictates the terms of an HMO’s agreement with an
intermediary.  It requires, for example, that the delegation agreement be in
writing and that it be filed with the Texas Department of Insurance.  See
id. art. 20A.18C(a).  The provision on which the hospitals rely provides:

The written agreement must contain:

* * *

(4)       a provision that the delegation agreement may not
be construed to limit in any way the [HMO’s] authority or responsibility,
including financial responsibility, to comply with all statutory and
regulatory requirements . . .

Id.
art. 20A.18C(a)(4) (emphasis added).  The hospitals point to no evidence that
NYLCare violated article 20A.18C by failing to file a written agreement with
the required provisions.  And to the extent the hospitals contend Aetna
violated its responsibility to “comply with all statutory and regulatory requirements”
by failing to comply with the Prompt Pay Statute, we have already rejected the hospitals’
claim that Aetna is liable to them under that statute.  

            In
requiring a contract before imposing liability, the Prompt Pay Statute is
consistent with existing healthcare law.  A healthcare plan, like an insurance
policy, is a contract.  The named beneficiary, as a party to the contract, may
sue on it, but a stranger to the contract may not.  Cf. Hermann Hosp. v.
Liberty Life Assurance Co. of Boston, 696 S.W.2d 37, 40 (Tex. App.—Houston
[14th Dist.] 1985, writ ref’d n.r.e.); Doss v. Roberts, 487 S.W.2d 839,
841 (Tex. Civ. App.—Texarkana 1972, writ ref’d n.r.e.).  Medical providers
cannot, on their own account, enforce the terms of a healthcare plan.  Pascack
Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d
393, 400 (3d Cir. 2004) (hospital did not have standing under ERISA to sue in
its own right for health care benefits).  Providers must sue through an
assignment to stand in the shoes of a beneficiary (their patient), or they must
sue on their own provider contracts.  See Lone Star OB/GYN Assocs. v. Aetna
Health Inc., 579 F.3d 525, 529 n.3 (5th Cir. 2009) (finding the provider
“clearly has standing” to seek benefits under the health care plans, because
the provider’s patients had assigned their rights under those plans); Hermann
Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1290 n.13
(5th Cir. 1988) (stating that without an assignment “providers would either
have to rely on the beneficiary to maintain an ERISA suit, or they would have
to sue the beneficiary”).  But the hospitals do not contend that they are
pursuing their patients’ claims through assignments, and they have stipulated
that they have no contracts with Aetna.  

            In
summary, we find the hospitals’ arguments unavailing and conclude that the
plain language of the Prompt Pay Statute requires contractual privity between
the HMO and the provider for purposes of a claim under subsection (f) of that
statute.  See Tex. Ins. Code art. 20A.18B(c), (f).  Because the trial
court properly could have denied the hospitals’ partial motion for summary
judgment and granted Aetna’s cross-motion for summary judgment on that basis,
the trial court did not err.  We overrule the Hospitals’ issue. 

*
* *

            We
affirm the trial court’s judgment.

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce,
and Jamison.









[1]
The Health Care Financing Administration is now known as the Centers for
Medicare and Medicaid Services.  See Christus Health Gulf Coast v. Aetna,
Inc., 237 S.W.3d 338, 339 & n.1 (Tex. 2007).  The Christus
opinion details the relationship between the Medicare program at issue and HMOs
like Aetna, and so it will not be repeated here.  See id. at 339–40.





[2]
The Texas Insurance Code currently defines capitation as “a method of
compensating a physician or provider for arranging for or providing a defined
set of covered health care services to certain enrollees for a specified period
that is based on a predetermined payment per enrollee for the specified period,
without regard to the quantity of services actually provided.”  Tex. Ins. Code
§ 843.002(4).  Federal Medicare regulations similarly define capitation as “a
set dollar payment per patient per unit of time (usually per month) paid to a
physician or physician group to cover a specified set of services and administrative
costs without regard to the actual number of services provided” including “the
physician’s own services, referral services, or all medical services.” 42
C.F.R. § 422.208(a) (2011).





[3]
According to Aetna, Management Services and NYLCare entered into an agreement
providing that NYLCare would make monthly capitation payments to Management
Services, and in return, Management Services agreed to guarantee enrollees’
access to medical benefits by contracting with providers and hospitals to
provide healthcare services to NYLCare 65 enrollees.  





[4]
In Christus Health Gulf Coast, the court noted that the hospitals
referred to NAMM and Management Services collectively as “NAMM.”  See
237 S.W.3d at 340 n.6.  The Hospitals continue to do so in their briefing below
and in this court.  





[5]
In their motion for summary judgment and response to Aetna’s cross-motion, the
Hospitals made no reference to their other pleaded claims, and on appeal do not
dispute that those claims were waived below.  Therefore, the trial court’s
judgment disposed of the Hospital’s only claim and is a final, appealable
judgment.





[6]Act
of May 29, 1999, 76th Leg., R.S., ch 1343, § 1, 1999 Tex. Gen. Laws 4556, 4556–57,
repealed by Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, 2001
Tex. Gen. Laws 3658, 3793–95 (current version at Tex. Ins. Code § 843.338). 
Consistent with the parties’ briefing, and unless otherwise specified,
citations to the Insurance Code will be to the 2000 version of the code.





[7]
The parties strenuously dispute whether the hospitals’ claims were “clean
claims” entitled to payment, but our disposition of the case makes it
unnecessary for us to reach this issue.





[8]
At oral argument, counsel for the Hospitals also argued that subsection (c) of
the Prompt Pay Statute reflects that contractual privity is not required
because subparts (c)(2) and (c)(3) do not refer to a contract, but only require
a written response, which Aetna never provided.  But when read together, it is
apparent that subparts (c)(1), (c)(2), and (c)(3) provide three ways to timely
respond to “the claim,” meaning the claim contemplated under “the contract
between the . . . provider and the health maintenance organization.”  See
Tex. Ins. Code art. 20A.18B(c)(1)–(3).  Specifically, the HMO may pay the total
amount of “the claim” in accordance with the parties’ contract, pay a portion
of “the claim” that is not disputed, or notify the provider in writing why “the
claim” will not be paid. 





[9]
A “delegated entity” means “an entity, other than a[n HMO] authorized to do
business under this Act that by itself, or through subcontracts with one or
more entities, undertakes to arrange for or to provide medical care or health
care to an enrollee in exchange for a predetermined payment on a prospective
basis and that accepts responsibility to perform on behalf of the [HMO] any
function regulated by this Act. . . .”  Act of May 17, 2001, 77th Leg., R.S.,
ch. 550, § 2, 2001 Tex. Gen. Laws 1041, 1041.





[10]
Section 422.502 of the 1999 Code of Federal Regulations is entitled “Contract
provisions” and specifies the provisions that must be contained in the contract
between the HMO and HCFA.  





[11]
For the same reason, we do not find persuasive the hospitals’ citation of Rush
Prudential HMO, Inc. v. Moran, 536 U.S. 355 (2002).  In Rush, the
court determined that a provision of the Illinois HMO Act was not preempted by
ERISA; it did not address an HMO’s liability for any claim on the merits.  See
id. at 386–87 (holding state statute requiring HMOs to provide independent
review of treatment decisions was not preempted by ERISA).  In this context,
the court merely noted that capitation contracts do not relieve an HMO of its
obligations to its beneficiaries.  Id. at 371 (“The HMO is still
bound to provide medical care to its members, and this is so regardless of the
ability of physicians or third-party insurers to honor their contracts with the
HMO.”).  As the Hospitals concede, they are not asserting claims on behalf of NYLCare
65 enrollees, so the Rush court’s statements do not help them.